Fuchsberg, J.
Respondent, a candidate for the local school board, was convicted by the City Court of Buffalo for using sound amplification equipment on a public street corner without first having obtained the permit required by section 1703 of chapter XXV of that city’s ordinances. The Erie County Court reversed her conviction, finding the ordinance an unconstitutional infringement of First Amendment rights. The People now appeal.
We agree with the County Court that the ordinance, as presently written, is unconstitutional.
The use of streets and other public places for the exercise of the right to free speech and peaceable assembly, to which the sound amplifying equipment here was but an adjunct, has "from ancient times, been a part of the privileges, immunities *532 rights, and liberties of citizens.” (Hague v C. I. O., 307 US 496, 515.) Implementation of these individual rights has given frequent rise to problems of fair accommodation to the competing right of the State to preserve public order and safety.
The search for permissible limits of regulation and order of priorities between First Amendment rights and the police power has taken the case law through a tortuous and nondefinitive course. At times it has resulted in the application of "a clear and present danger” standard (Herndon v Lowry, 301 US 242, 258), at others in a delicate ad hoc balancing of the interests in free speech against those to be protected by a particular restriction (Street v New York, 394 US 576), or has rested on a determination of whether there is a direct incitement to unlawful action (Bond v Floyd, 385 US 116), or in the recognition of full protection for the right of expression as distinguished from action (see Black, A Constitutional Faith, ch 3). Despite their disparate approaches, the decisions make clear that the power of the State to infringe on the freedoms embodied in the First Amendment is a limited one, defined not by mere rationality of purpose but by a more stringent requirement of real necessity. (Cox v Louisiana, 379 US 536, 550-558; Edwards v South Carolina, 372 US 229; Cantwell v Connecticut, 310 US 296; Thornhill v Alabama, 310 US 88; Terminiello v Chicago, 337 US 1; Cox v New Hampshire, 312 US 569; Lovell v Griffin, 303 US 444; Hague v C. I. O., supra; Kunz v New York, 340 US 290; Niemotko v Maryland, 340 US 268; Schneider v State, 308 US 147; Coates v City of Cincinnati, 402 US 611, 615; Grayned v City of Rockford, 408 US 104,114-117.)
Against this background, we turn now to the cases which have dealt specifically with the questions raised by the use of sound equipment by individuals to communicate their views in public places. The basic guidelines evolve from a pair of cases decided by the United States Supreme Court. The first of these was Saia v New York (334 US 558). There the court, confronted with municipal legislation which gave complete discretion to the local police chief to decide who should be allowed the use of amplification equipment, held the ordinance unconstitutional. In dicta it also seemed to indicate that the First Amendment allowed no restrictions whatever to be placed on the use of such equipment.
However, only months later, in Kovacs v Cooper (336 US 77), the court cut back markedly on the scope of its pro *533 nouncements in Saia. (See Comment, 62 Harv L Rev 1228.) Reviewing an ordinance which simply forbade all "loud and raucous” use of sound equipment upon vehicles on public streets, alleys and thoroughfares, but left no broad Sa/a-like discretion in the police, the court found it constitutionally valid.
The City of Buffalo relies heavily on Kovacs, in fact asserting here that the ordinance before us was written with that case in mind. It is true that the ordinance, in specifying the volumes and distances which delimit permissible noise levels, not only speaks to the specific area of regulation with which Kovacs treats, but also, in supplying more precise standards, does not suffer from the vagueness which made the Kovacs ordinance less than ideal.* (See Grayned v City of Rockford, 408 US 104, 108-114, supra.) For similar reasons, those parts of the ordinance which list the times and places where sound equipment may not be used and spell out criteria, such as congested traffic conditions, street repairs, or overcrowding caused by overlap of permits, to guide the police in determining whether considerations of public safety are extensive enough to permit limitations on the granting of a permit in the first instance, cannot be attacked for insufficient specificity (Contrast Cantwell v Connecticut, 310 US 296, supra [freedom of religion]; Lovell v Griffin, 303 US 444, supra [freedom of the press]; Hague v C. I. O., 307 US 496, supra [freedom of speech].)
But in other crucial respects the ordinance contains provisions which on their faces impinge impermissibly upon the rights of free speech and assembly. In our discussion of them it should be noted that while we agree with its result, we do not adopt all the reasons relied on in an earlier case in Erie County Court (People v Dominick, 68 Misc 2d 425), which also found the statute unconstitutional.
First, it requires persons desiring permits to apply for them at least five days before they are to be used. Such a long delay could cast a chill over the freedom of speech in a number of areas by rendering its subject matter stale if not entirely moot. The political arena comes to mind immediately as a good example. There time is often of the essence, and the desire to publicize views or reply to accusations, some of *534 which may even had had the advantages of the speed of such media as radio and television, might be frustrated completely by the need to wait five days. Mere administrative convenience does not justify an impediment which so seriously undermines the exercise of a constitutional right. (Le Flore v Robinson, 434 F2d 933; cf. Reed v Reed, 404 US 71.) The vice of this portion of the ordinance is compounded by the fact that, although provision is made for review of denials, it is only an administrative one and no time limit is specified within which even that may be had. Thus an applicant unjustifiably denied a permit is left with an indefinite wait for relief.
Second, the ordinance requires that the name of every person who will speak through the equipment be disclosed on the application; it further mandates that permits be denied when any person involved has been convicted of a crime or of disorderly conduct. The almost necessary result is to bar free speech, and for no permissible reason. For example, neither replacement of unavailable scheduled speakers nor the addition of newly available speakers is permitted. Even more fundamentally, the object of regulation here being the use of sound equipment rather than the right to speak per se, the applicant’s name should suffice and the superfluous request for the additional names is a form of censorship. (Thomas v Collins, 323 US 516, 539-541.)
The mandate against persons with convictions adds but another, though even more absolute, exclusion. That provision reads: "No permit shall be issued where it appears that the applicant or any other person whose name appears on the application as a participant in the broadcasting of such sound, or under whose auspices such sound is to be broadcast, has been convicted of a crime or disorderly conduct.” (§ 1703, subd [14]; emphasis added.)
Denial of a permit on such grounds constitutes not only a classic instance of impermissible overbreadth but also a prior restraint on freedom of speech. (Saia v New York, 334 US 558, supra; Cantwell v Connecticut, 310 US 296, supra; Lovell v Griffin, 303 US 444, supra, Hague v C. I. O., 307 US 496, supra.)
Finally, the ordinance requires that applicants for permits describe the nature of the subject matter to be broadcast. This too constitutes a form of prior restraint, and it also falls squarely within that portion of the ruling in Saia which held *535 excessive discretion to decide what may be broadcast over amplifying equipment may not be left in the hands of the police. (See, also, Cox v Louisiana, 379 US 536, supra.)
As we have had occasion to say in the past (People v Katz, 21 NY2d 132, 135): "It is, of course, appropriate for municipalities to enact legislation designed to promote general convenience on public streets. On the other hand, streets have always been recognized as a proper place for the dissemination and exchange of ideas (Kovacs v Cooper, supra, p 87). Where a statute is couched in such broad language that it is subject to discriminatory application, the resulting infringement on the exercise of freedom of speech far outweighs the public benefit sought to be achieved.”
That mention is not made of the other detailed provisions of this statute should not be taken as indicative or significant. It suffices for the disposition of this appeal to draw attention to the infirmites which have been noted.
Accordingly, the ordinance in its present form must be held to be unconstitutional and the order of the Erie County Court reversing defendant’s conviction left to stand.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Cooke concur.
Order affirmed.

 See 336 US 77, 98 (concurrence of Mr. Justice Jackson), pp 99-104 (dissent of Mr. Justice Black), pp 104-106 (dissent of Mr. Justice Rutledge).