Julian Hertz, J.
The defendant has challenged the constitutionality of section 435-6.0 of the Administrative Code of the City of New York and has moved, pursuant to CPL 170.30 (subd 1) and CPL 170.35, to dismiss the complaint presently before this court.
The uncontested facts show that on November 25, 1975, the defendant, representing a minority political party, was operating a bullhorn at the intersection of 14th Street and the *686 Avenue of the Americas in New York County. The defendant had not received nor applied for a permit to operate the bullhorn. A permit is required under section 43506.0 of the Administrative Code of the City of New York. Consequently, the defendant was issued an appearance ticket and was charged with a violation of section 435-6.0 in that he was operating a sound amplification device without a permit.
The defendant contends that section 435-6.0 of the Administrative Code constitutes an illegal infringement on the right of free speech guaranteed by the First Amendment.
The relevant parts of section 435-6.0 of the Administrative Code of the City of New York are as follows:
"d. Use and operation of sound devices and apparatus for other than commercial and business advertising purposes; permit required. It shall be unlawful for any person to use or operate any sound device or apparatus, in, on, near or adjacent to any public street, park or place, unless he shall have first obtained a permit to be issued by the commissioner in the manner hereinafter prescribed and unless he shall comply with the provisions of this section and the terms and conditions prescribed in such permit.
"e. Applications. — Each applicant for a permit to use or operate a sound device or apparatus in, on, near or adjacent to any public street, park or place shall file a written application with the commissioner, at the police precinct covering the area in which such sound device or apparatus is to be used or operated, at least five days prior to the date upon which such sound device or apparatus is to be used or operated. Such application shall describe the specific location in which such sound device or apparatus is proposed to be used or operated, the day and the hour or hours during which it is proposed to be used or operated, the volume of sound which is proposed to be used measured by decibels or by any other efficient method of measuring sound, and such other pertinent information as the commissioner may deem necessary to enable him cto carry out the provisions of this section * * *
"Each permit issued pursuant to this section shall describe the specific location in which such sound device or apparatus may be used or operated thereunder, the exact period of time for which such apparatus or device may be operated in such location, the maximum volume of sound which may be employed in such use or operation and such other terms and conditions as may be necessary, for the purpose of securing *687 the health, safety, comfort, convenience and peaceful enjoyment by the people of their right to use the public streets, parks or places for street, park or other public purposes, protecting the health, welfare and safety of the inhabitants of the city, and securing the peace, quiet and comfprt of the neighboring inhabitants.” (Emphasis added.)
' The City of New York has the power to adopt statutes covering the health and welfare of its citizens.*
Deriving therefrom are many cases granting police power to localities for the preservation and promotion of health, safety and general welfare of their inhabitants (see People v Lewis, 295 NY 42; People v Munoz, 22 Misc 2d 1078; People v Lederle, 206 Misc 244, affd 285 App Div 974; Matter of Molnar v Curtin, 273 App Div 322, affd 297 NY 967).
The afore-mentioned provisions of the New York City Administrative Code represent an attempt on the part of the City of New York to control sound devices capable of creating nuisance conditions.
Usually, statutes aimed at promoting the public good receive a liberal construction and are construed in such a manner as to accomplish their intent.
It must be remembered that this court of first instance is guided by certain established concepts. Among them is that courts should not determine unconstitutionality unless that result is clearly required. Another dogma presumes statutory validity and the party challenging has the burden of showing unconstitutionality (McKinney’s Cons Laws of NY, Book 1, Statutes, § 150, subds a, b).
The defendant’s attack on the code section relies exclusively upon a recent Court of Appeals decision, People v Taub (37 NY2d 530). A closer examination of that case is required. In *688 Taub, the defendant was a candidate for a local school board. She was convicted for using sound amplification equipment on a public street without having first obtained a permit required under the local ordinances of the City of Buffalo.
The Buffalo statute had the following provisions: (1) The persons wishing permits were required to apply for them at least five days in advance. (2) The name of every person who was to use the equipment had to be disclosed on the application. (3) Permits were not to be granted to those persons who had been convicted of a crime or of disorderly conduct. (4) The ordinance requires a description of the nature of the subject matter to be broadcast.
The Court of Appeals stated (p 533) that the requirement for "five days prior” notice to the licensing authority "could cast a chill over the freedom of speech in a number of areas”. In referring to the need for prompt public discussion of political issues, the court stated (p 533) that "time is often of the essence” and that interval would greatly impede the ability of a smaller political group to respond to views and charges aired on radio and television as compared with a larger, more financially able group.
As to the requirement for a list of speakers who were to speak utilizing the device, the end result might bar free speech for no permissible reason. The court stated (p 534) that "the applicant’s name should suffice.” The request for additional names was deemed a form of censorship.
The requirement that no person be given a permit if that person had been convicted of a crime or of disorderly conduct was dispatched as being not only a (p 534) "classic instance of impermissible overbreadth but also a prior restraint on freedom of speech.”
The requirement for a description of the subject matter to be broadcast constituted a form of prior restraint and gave excessive discretion to police authorities as to what may or may not be broadcast.
The Buffalo statute, described in most generous terms, can only be said to have been repressive.
In effecting a balance between legislation enacted to promote general convenience on the public streets (People v Katz, 21 NY2d 132) and the ancient right of citizens to use the streets as an area in which free people exercise the right of freedom of speech (Hague v C.I.O., 307 US 496), the court *689 conceives the use of sound amplification equipment in this case merely as an extension of this right.
Of course, no right is absolute, and it has been recognized that the hours and place of public discussion can be controlled (Saia v New York, 334 US 558; Kovacs v Cooper, 336 US 77).
Section 435-6.0 requires the following: (1) The application be made five days prior to its use. (2) The specific location be designated. (3) The day and hour or hours of use. (4) The volume of sound.
Thus, the statute contains a "five day prior” requirement, and, as expounded in People v Taub (37 NY2d 530, supra), such a requirement does have some chilling effect, especially where political groups are concerned.
Subdivision 2 of chapter 17/121.0 of the Rules and Procedures of the New York City Police Department contains, however, procedures for avoiding, in a proper case, the "five day prior” regulation. It states as follows: "An application for a sound device or apparatus sound permit shall be made on the prescribed Police Department form and must be filed by the applicant or a duly authorized agent of the applicant in the precinct wherein the device or apparatus is to be used to the greatest extent at least five (5) days prior to the date upon which the sound device or apparatus is to be used or operated except that in the case of a sudden event of great public interest where the applicant was unable, through no fault of his, to file the application within the required time, the commissioner may, for good cause, in his discretion, waive this provision and direct the acceptance of the application at any time prior to the event.”
It is the People’s contention that this New York City Police Department regulation rectifies any defect in the statute, if, indeed, the New York City Administrative Code is subject to a successful constitutional challenge despite its manifest differences from the Buffalo ordinance which was declared unenforceable. It is well to observe, moreover, that the People may prove on trial that these permits are granted for immediate use, upon request, as a routine matter. The Corporation Counsel so claims in his opposition papers on this motion.
In short, it seems quite demonstrable that the New York City ordinance is distinguishable from that struck down in the precedent case. This motion to dismiss presents only a question of law. For the reasons stated it is concluded that a trial is necessary. Thereupon it can be determined whether the *690 ordinance violates the defendant’s rights as a factual matter or, perhaps, as a mixed question of law and fact. Following that, and as may be necessitated by a possibly adverse determination at trial, the defendant, if so advised, may seek review upon a complete record. The motion to dismiss is denied.

 Section 10 of the Municipal Home Rule Law states:
"(i) every local government shall have power to adopt and amend local laws not inconsistent with the provisions of the constitution or not inconsistent with any general law relating to its property, affairs or government and,
"(ii) every local government, as provided in this chapter, shall have power to adopt and amend local laws not inconsistent with the provisions of the constitution or not inconsistent with any general law, relating to the following subjects, whether or not they relate to the property, affairs or government of such local government, except to the extent that the legislature shall restrict the adoption of such a local law relating to other than the property, affairs or government of such local government: a. A county, city, town or village * * *
"(12) The government, protection, order, conduct, safety, health and well-being of persons or property therein.”