The People of the State of New York, Respondent, 
against
Nicole Carty, Defendant-Appellant.



Defendant appeals from a judgment of the Criminal Court of the City of New York, New York County (James M. Burke, J.), rendered September 7, 2012, after a nonjury trial, convicting her of two counts of disorderly conduct, and imposing sentence.




Per Curiam.
Judgment of conviction (James M. Burke, J.), rendered September 7, 2012, affirmed.
Defendant was convicted, after a nonjury trial, of two counts of disorderly conduct, arising from her participation in an "Occupy Wall Street" protest. Defendant's present arguments relating to the legal sufficiency of the evidence, to the extent preserved for appellate review, are lacking in merit. Nor was the verdict against the weight of the evidence. The People's proof established that defendant obstructed pedestrian traffic (see Penal Law § 240.20[5]) by laying down on a busy Wall Street sidewalk at 4:00 PM on a trading day, side-by-side with other "Occupy" protestors, and refused to comply with a lawful police order to disperse (see Penal Law § 240.20[6]). This evidence established the elements of the two types of disorderly conduct at issue (see People v Seck, 126 AD3d 574 [2015], lv denied 25 NY3d 1171 [2015]).
Furthermore, defendant testified that she had been trained in "street tactics," including how to "form a wall" and "blockade" pedestrian and vehicular traffic, and that the "Occupy Wall Street" demonstrators chose that particular time and location (and also chose to lie down, rather than stand) in order to communicate their message about the injustices created by Wall Street "to as many people as possible." In fact, defendant flatly acknowledged that potentially obstructing pedestrian traffic "wasn't going to stand in the way of ... advancing her message." It is no wonder, then, that defendant expressly conceded at oral argument before this court that she possessed the requisite mens rea to sustain her convictions, i.e., that she acted with intent to cause public inconvenience, annoyance or alarm, or recklessly created a risk thereof (see People v Weaver, 16 NY3d 123 [2011]), and abandoned her legal sufficiency challenge with respect to this element.
The dissent's assertion that the video recording of the incident demonstrates interference with only a "minuscule" number of pedestrians in the "open pedestrian plaza" around Wall Street ignores critical and indisputable evidence on that video recording, including that the police placed barricades around the subject pedestrian area due to this demonstration, as well as a larger [*2]simultaneous demonstration that was occurring directly across the street; that scores of pedestrians were pinned against the barricades; and that the police can be heard yelling "keep back" at the crowd, which was understandably precluded from traversing across the subject sidewalk for fear of trampling the protesters.
Defendant's claim that the Police Department, in violation of the First Amendment, instituted a "complete ban on lying down on sidewalks as a form of protest," finds no support in the record and, in any event, was not raised below and, therefore, is unpreserved for our review. Nevertheless, it is well settled that a state may prohibit a speaker from "taking [her] stand in the middle of a crowded street, contrary to traffic regulations ... since such activity bears no necessary relationship" to the freedom of speech (see Schneider v State, 308 US 147, 160-161 [1939]; see also Cox v New Hampshire, 312 US 569, 574 [1941]; Papineau (Jones) v New York (Parmley), 465 F3d 46, 56-57 [2d Cir. 2006]). As this court held in People v Penn (48 Misc 2d 634 [App Term, 1st Dept [1964], affd 16 NY2d 581 [1964]), protests and demonstrations are "subject to reasonable regulation and control in the interest of public safety and order." When conduct, even taking the form of protest, substantially interferes with vehicular or pedestrian traffic, prosecutions for disorderly conduct are appropriate and constitutional (see People v Turner, 48 Misc 2d 611 [1965], affd 17 NY2d 829 [1966]).
THIS CONSTITUTES THE DECISION AND ORDER OF THE COURT.
I concur I concur I concur
Hon. Doris Ling-Cohan, Dissenting Opinion
I respectfully dissent and vote to reverse defendant's conviction. Defendant's peaceful protest activity - constitutionally protected under the First Amendment - did not violate the disorderly conduct statute, Penal Law §§ 240.20 (5) and (6).[FN1]

Penal Law § 240.20 (5)

A person is guilty of disorderly conduct under Penal Law § 240.20 (5) "when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof . . . [s]he obstructs vehicular or pedestrian traffic." Notwithstanding the majority's focus on mens rea being conceded, nonetheless, the other necessary elements were not proven. At most, the People proved a mere "temporary inconvenience" caused to pedestrians, which is insufficient. While the Penal Law does not define "obstructs vehicular or pedestrian traffic," the Court of Appeals has made clear that "[s]omething more than a mere inconvenience of pedestrians is required to support the charge" (People v Jones, 9 NY3d 259, 262 [2007] [emphasis added]; People v Pearl, 66 Misc 2d 502 [App Term, 1st Dept 1971] [something more than the temporary inconvenience caused to pedestrians by the demonstrators' blocking of the crosswalk, resulting in pedestrians entering the roadway to get to the other side, was required to sustain a conviction for obstructing pedestrian traffic]; see also People v Nixon, 248 NY 182, 187-188 [1928], revd on other grounds by People v Santos, 86 NY2d 869 [1995]). 

This crucial element of "more than a mere inconvenience of pedestrians" is absent in this case (People v Jones, 9 NY3d 259, 262 [2007]). Thus, defendant's guilt under Penal Law § 240.20 (5) was not established beyond a reasonable doubt. The videotape evidence of the subject [*3]incident submitted by both sides conclusively demonstrates that defendant, and the six (6) other individuals who laid down on the sidewalk with her as part of the Occupy Wall Street protest, caused, at most, only a temporary inconvenience to a minuscule number of pedestrians, who were otherwise able to freely traverse the wide sidewalk [FN2]
in front of the building;[FN3]
as well as Wall Street area's open pedestrian plaza (which consisted of roadways, closed to vehicular traffic). In fact, the videos introduced by both the People and defendant indisputably show a wide expanse of sidewalk in front of the building, and numerous pedestrians freely walking across the vast sidewalk and past the demonstrators. Further, the videotape shows a sidewalk wide enough for at least several people to lay head-to-toe without obstructing pedestrian traffic. Additionally, the People's video shows other people sitting down approximately five (5) feet away from the protestors, having a meal, unimpeded by the protestors, nor bothered by the police. The video evidence further confirms that at some point several police barricades were placed closer to the protesters, thereby causing a smaller area available to pedestrians to traverse. Such video shows the rest of the sidewalk from the barriers — which had been placed a foot away from the protesters who were peacefully lying down on their backs with signs held up [FN4]
— was either empty space or occupied by the police. The videos also show the wide expanse of the Wall Street "pedestrian plaza" (which had been the roadway) barricaded by the police so that no pedestrians could enter. Notably, the videos clearly show that pedestrians were still able to cross the sidewalk. In addition to the video evidence (presented without objection), the People's witness, Police Officer Ban, testified that pedestrians could cross the sidewalk. A ten-second clip of defendant's video evidence corroborates that approximately thirteen (13) pedestrians walked around the supine protesters, without difficulty, traversing along the subject sidewalk.[FN5]
Further, the People's videos [*4]present that just prior to defendant's arrest, in addition to the seven (7) protesters, no less than ten (10) police officers also stood on the subject sidewalk — almost double the number of protesters — while still leaving space for passersby to cross. While the majority points to the placement of barricades due to the demonstrators, claiming that "scores of pedestrians were penned against the barricades", the video evidence shows that the people against the barricades closest to the protestors were media, holding sophisticated photographic equipment aimed at the defendant, her colleagues and the police. Nor was there testimony that the barricades were placed for the safety of the protestors, "for fear of trampling the protestors" as concluded by the majority. Furthermore, as it is undisputed that all vehicular traffic is normally barred from this pedestrian plaza in the Wall Street area, pedestrians would have been ordinarily free to walk in the "roadway", rather than the sidewalk, but for the police barring such activity, with their barricades and other actions. In any event, assuming that, indeed, some pedestrians were inconvenienced, there was no testimony as to the actual number affected, if any, or that any pedestrians had complained (c.f. People v Turner, 48 Misc 2d 611 [App Term, 1st Dept 1965]), nor did any allegedly impeded pedestrian testify.

Crediting the testimony of all of the People's witnesses, the People nonetheless proffered no testimony that the protesters caused more than a "mere inconvenience" to pedestrians (People v Jones, 9 NY3d 259, 262 [2007]; People v Pearl, 66 Misc 2d 502 [App Term, 1st Dept 1971]).[FN6]
Moreover, weighing the relative probative force of the testimony of the People's witnesses against the conclusive and undisputed videotape evidence, the court was not justified in finding defendant guilty beyond a reasonable doubt, because pedestrians were still able to walk across the sidewalk without major disturbance, as evidenced by the video (People v Bleakley, 69 NY2d 490, 495 [1987]; People v Danielson, 9 NY3d 342, 349 [2007]; see also People v Perry, 265 NY 362, 365 [1934] [holding that the disorderly conduct conviction of defendants was without justification in the law where, "actually[,] the defendants annoyed no one, disturbed no one, interfered with no one"]). In fact, the video evidence indisputably shows that during every second of the video, at least one (1) to two (2) people traversed the sidewalk at issue and were not impeded. Thus, the lower court's conclusion that defendant engaged in conduct that interfered with pedestrian traffic is against the weight of the clear and most compelling evidence [*5](see People v Nixon, supra; People v Carcel, 3 NY2d 327, 332 [1957]).[FN7]

Penal Law § 240.20 (6)

Nor did defendant violate subdivision (6) of Penal Law § 240.20, because her peaceful protest activity was protected by the First Amendment.

As a threshold matter, the majority is in error in stating that the First Amendment argument was not raised below and is therefore unpreserved for review. Defendant's counsel explicitly raised a First Amendment argument at the end of defendant's case and, in fact, renewed the argument during closing. Further, the People never argued on appeal that defendant's First Amendment argument was unpreserved.[FN8]
 Finally, significantly, a weight of the evidence review need not be preserved below and, nevertheless, must be addressed by an appellate court when raised on appeal (see People v Danielson, 9 NY3d 342 [2007]; People v Mason, 21 NY3d 962 [2013]). Accordingly, this court may review the merits of defendant's First Amendment defense.

Penal Law § 240.20 (6) provides that a person is guilty of disorderly conduct when, with the same intent or recklessness, "[s]he congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse." Significant in this regard is the pre-drafted order to disperse, admittedly prepared by the New York City Police Department's Legal Bureau (Legal Bureau), and read by a police officer through a bullhorn in front of the protesters. The order stated: "[b]e advised that sitting or lying down on the sidewalk is not permitted. You are blocking pedestrian traffic as well. Anyone who is sitting or lying down must now get up or be subject to being arrested" (emphasis added).

It is of critical importance that the "dispersal" order at issue utilized the term "as well" to connote the two distinct bases for issuing the order, one of which was that "sitting or lying down on the sidewalk is not permitted." However, a complete ban on peaceful stationary protest activity violates the First Amendment and is unconstitutional (see Bery v City of New York, 97 F3d 689, 697 [2nd Cir 1996], cert denied 520 US 1251 [1997] ["The City may enforce narrowly designed restrictions as to where appellants may exhibit their works in order to keep the sidewalks free of congestion and to ensure free and safe public passage on the streets, but it cannot bar an entire category of expression to accomplish this accepted objective when more narrowly drawn regulations will suffice"]; Metropolitan Council, Inc. v Safir, 99 F Supp2d 438, 445 [SDNY 2000] ["The City's complete ban — encompassing public sleeping in any manner on all sidewalks at all times by all people as part of any activity — is overbroad"]). 

The entire directive here, which was pre-printed by the Legal Bureau, indicates that the Police Department disapproved of, and was prohibiting, "lying down" as a means for political protest. In fact, at oral argument the question was posed to the People as to whether defendant would have nonetheless been arrested if she had been standing rather than lying down, even if she occupied the same spatial footprint. The People unequivocally answered that defendant Carty [*6]would not have been arrested had she been standing in protest.[FN9]
Since the order was unconstitutional, and inasmuch as "[o]ne cannot be punished for failing to obey the command of an officer if that command is itself violative of the Constitution" (Wright v State of Georgia, 373 US 284, 291-92 [1963]), defendant cannot be convicted under Penal Law § 240.20 (6).

Additionally, the police merely ordered the protesters to "get up or be subject to being arrested," rather than "to disperse" (or to leave). Such order does not comply with the elements of a Penal Law § 240.20 (6) violation, as the statute plainly requires a "lawful" order "to disperse," and, in any event, the order to merely "get up" would not have significantly alleviated any alleged blockage of pedestrian traffic.

Further, the People's video shows that the protesters were arrested within approximately five (5) seconds of the alleged "dispersal" order (People's exhibit 1, Video 2012042016002 at 0:46-0:51), which did not constitute "fair warning." Given that defendant was peacefully exercising her core First Amendment rights, the police could not, in the absence of any imminent public harm, not shown on this record, simply disperse the protestors without giving fair warning (see Jones v Parmley, 465 F.3d 46, 60 [2d Cir. 2006]; City of Chicago v Morales, 527 US 41, 58 [1999] ["the purpose of the fair notice requirement [in disorderly conduct statutes] is to enable the ordinary citizen to conform his or her conduct to the law"]). While the alleged dispersal order stated, "anyone who is sitting or lying down must now get up or be subject to being arrested," the video of the incident establishes that defendant was not provided with the requisite "fair warning," in that, notwithstanding the unconstitutionality of the police order, defendant was not given time to comply with the order as required, since she was placed under immediate arrest (see Dellums v Powell, 566 F.2d 167, 181 n.31 [D.C. Cir. 1977][where "the record... indicates that not all of the arrestees were violent or obstructive or noisy... notice and time to comply with a dispersal order is required] [emphasis added], cert. denied 483 US 916 [1978]).

Therefore, defendant's conviction under subsection 6 was against the weight of the evidence, as she did not fail to obey a "lawful order of the police to disperse" (Penal Law § 240.20 [6] [emphasis added]; People v Danielson, 9 NY3d 342 [2007]), in that the police order at issue neither demanded that the protesters disperse, nor gave them fair warning to do so, prior to their arrest.

"The use of streets and other public places for the exercise of the right to free speech and peaceable assembly ... has from ancient times, been a part of the privileges, immunities, rights, and liberties of citizens'" (People v Taub, 37 NY2d 530, 531-532 [1975], citing Hague v Committee for Indus. Org., 307 US 496, 515 [1939]). The circumstances at bar, in which defendant Carty laid down on a sidewalk located in a pedestrian plaza, holding a sign that read, "I have two jobs and I still have to choose between groceries and a doctor", do not warrant the abrogation of defendant's important constitutional right to free speech, and, thus, defendant's conviction of disorderly conduct should be reversed and the accusatory instrument dismissed.

Decision Date: December 14, 2016



Footnotes

Footnote 1:Notwithstanding a line of inquiry at oral argument, defendant was not required to obtain a permit(38 NYCRR § 19-02 [a]), and was not charged with parading without a permit.

Footnote 2:The testimony of defendant Carty testified that it was twenty-five (25) feet and four (4) inches wide, after measuring the sidewalk during the continuance from one day to the next; Lieutenant Viviano indicated that the sidewalk was as wide as twenty (20) feet; and Police Officer Ban testified that the sidewalk was only nine (9) feet, which was plainly contrary to the video.

Footnote 3:At oral argument, both sides agreed that the parties had misidentified the building along whose steps defendant Carty was positioned. Throughout the trial and papers submitted to the Court, the building was incorrectly referred to as 26 Wall Street or Federal Hall. However, the building that occupies the southeast corner of Wall Street and in front of which Carty protested is 23 Wall Street, a historic, but vacant building. Therefore, the People's argument, accepted by the lower court, imploring the Judge to imagine the risk to a person exiting the (unoccupied) building, is baseless and insufficient proof to abridge the important constitutional rights afforded by the First Amendment. 

Footnote 4:Defendant Carty's sign read: "I have two jobs and I still have to choose between groceries and the doctor."

Footnote 5:Defendant's conviction under Penal Law § 240.20 (5) would not be justified regardless of whether demonstrators caused pedestrians to walk in the roadway. In People v Pearl, 66 Misc 2d 502 (App Term, 1st Dept 1971), the evidence was insufficient to warrant such a conviction, because "[s]omething more than the temporary inconvenience caused to pedestrians by [demonstrators] blocking of the west crosswalk, requiring them to enter the roadway to get to the other side, was required to sustain a conviction for obstructing pedestrian traffic." Additionally, unlike in Pearl, the roadway at issue is closed off to vehicular traffic, and the entire Wall Street area operates as a pedestrian mall. Therefore, little to no hazard would have been encountered by any pedestrians who may have entered the cordoned roadway. 

Footnote 6:One of the People's two witnesses, Police Officer Ban, testified that pedestrians were indeed walking around the demonstrators. The People's remaining witness, Lieutenant Viviano, indicated that he did not recall whether or not pedestrians walked in front of the protesters.

Footnote 7:Neither the People, nor any of its witnesses, claimed such videos misrepresented the conditions occurring on such day.

Footnote 8:In their appellate briefs, the People agree that defendant's claims were partially preserved. The People only argue that Defendant's claims were unpreserved as to the defendant's requisite mens rea, which was conceded by defendant at oral argument. Brief for respondent at 15. 

Footnote 9:As captured in the video, among those not arrested by police at the site were the hordes of standing photographers who clearly impeded pedestrian traffic, as well as at least two people eating and observing on the stairs of the subject building and who were sitting approximately two (2) feet away from the protesters.