**OREGON BOOKMARK CORPORATION,**
**Plaintiff,**

v.

**Terry SCHRUNK, Mayor, Lloyd Anderson, Connie McCready, Francis Ivancie and Mark Grayson, Commissioners, all members of the Council of the City of Portland, Marian Rushing, City Attorney of the City of Portland, and Donald McNamara, Chief of Police of the City of Portland, Defendants.**

**Civ. No. 70–294.**

United States District Court,
D. Oregon.

Nov. 19, 1970.

Howard R. Lonergan, Portland, Or., for plaintiff.

Marian C. Rushing, Richard A. Braman, Portland, Or., for defendants.

## OPINION

ALFRED T. GOODWIN, District Judge.

This is a declaratory proceeding to determine whether a city can use its business-license powers to institute censorship of books and magazines. There is also a prayer for injunctive relief.

The plaintiff magazine dealer asserts that the Mayor and the City Council of the City of Portland are withholding a business license in violation of the free-press guarantee of the First Amendment to the United States Constitution and the Civil Rights Acts, 42 U.S.C. §§ 1981–1988. Jurisdiction is premised on 28 U.S.C. §§ 1331 and 1343.

The facts are not in dispute. Plaintiff is an Oregon corporation engaged in the retail sales of magazines and books in Portland. Plaintiff has, in the past, received a business license from the City of Portland. The City recently refused to renew the license, on the ground that the plaintiff's business is a public nuisance. The magazines sold by plaintiff are objectionable to the City Council, and are probably "obscene" under the rule of Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). The legal question, however, is whether

a city has the constitutional power to employ its nuisance laws for the purpose of censoring undesirable publications.

The Charter of the City of Portland grants to the City Council the power to grant or withhold business licenses, to declare what shall constitute a nuisance, to abate public nuisances, to define what literature and other material is obscene, and to prevent the sale and circulation of obscenity.

On December 11, 1969, the City Council passed Emergency Ordinance No. 130172, which includes a definition of obscenity quoted from ORS 167.151, and declares that any place exhibiting obscene material is a public nuisance.

The Director of the Bureau of Licenses initially refused plaintiff's application for renewal because of complaints about the materials offered for sale, and plaintiff appealed to the City Council. In a hearing at which plaintiff was represented by counsel, the City Council examined two magazines purchased by a police officer from one of plaintiff's stores. The City Attorney advised the Council on the Oregon statutory definition of obscenity and the applicable city ordinances. At the close of the hearing, the Council declared plaintiff's establishment to be a public nuisance, refused to renew the license, and advised plaintiff to discontinue its operation on pain of prosecution. Plaintiff nonetheless continued to operate its business, and its agents have been arrested and charged in Municipal Court with operating a business without a license.

The City has urged this court to find that, as a matter of law, the material being offered for sale by the plaintiff is obscene and therefore, under Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), is not protected by the First Amendment. The City then argues that it cannot be compelled to license a business which is a public nuisance.

It is immaterial, however, whether the books examined by the Council are obscene. I assume that they are. But the ordinance is unconstitutional on its face. It therefore makes no difference that the ordinance sweeps up the obscene in this case. It is capable of sweeping up the nonobscene as well. The defect in the ordinance is that it permits a type of censorship which depends upon the uncontrolled discretion of the City Council as censor. Thornhill v. Alabama, 310 U.S. 88, 97, 60 S.Ct. 736, 84 L.Ed. 1093 (1940).

Censorship began in Europe before printing was invented. The official licensing of printers followed immediately upon the success of that invention. After a century and a half of colonial experience with licensing acts, the American Republic set its face against this form of censorship. The language of the First Amendment was carefully selected to prevent federal censorship. The Fourteenth Amendment has been held to bar arbitrary state censorship. Jacobellis v. Ohio, 378 U.S. 184, 187, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1963). Censors are not easily discouraged, however, and the law reports abound with later cases arising out of official indignation with scandalous or unpopular materials. See, e. g., Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969). It is settled, however, that suppression of books is not permitted without a judicial hearing and a finding that the book is obscene. Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965); Kingsley Books, Inc. v. Brown, 354 U.S. 436, 77 S.Ct. 1325, 1 L.Ed.2d 1469 (1957).

It is of no legal consequence that the censor in this case did its work by refusing to renew a license rather than by refusing to issue one or by canceling an unexpired license. The assertion by a city of the power to grant or withhold a license to disseminate books is the essence of this censorship scheme.

The books involved here are trash. On aesthetic grounds the city is well rid

of them. But the federal constitution denies cities the power to license printers or booksellers as a control over the content of the material printed or sold. If the printer or bookseller commits a crime, he can be indicted and tried for that crime. I am aware that Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969), and Redrup v. New York, 386 U.S. 767, 87 S.Ct. 1414, 18 L. Ed.2d 515 (1967), have strictly limited the prosecutor's range in the criminal area but this does not permit me to overlook the grave constitutional infirmities inherent in this civil licensing procedure.

The "chilling effect" of a licensing act upon the exercise of the First Amendment rights is obvious: only those books and magazines likely at any given time to be approved by the incumbent city councilmen could safely be stocked on the bookshelves of Portland. Few booksellers would continue to carry questionable books on their shelves if they believed that in doing so they would risk loss of license to do business. In Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963), the Court stated:

> " * * * [T]he Fourteenth Amendment requires that regulation by the States of obscenity conform to procedures that will ensure against the curtailment of constitutionally protected expression, which is often separated from obscenity only by a dim and uncertain line. It is characteristic of the freedoms of expression in general that they are vulnerable to gravely damaging yet barely visible encroachments * * *.

> " * * *

> "Herein lies the vice of the system. The Commission's operation is a form of effective state regulation superimposed upon the State's criminal regulation of obscenity and making such regulation largely unnecessary. In thus obviating the need to employ criminal sanctions, the State has at the same time eliminated the safeguards of the criminal process. Criminal sanctions may be applied only after a determination of obscenity has been made in a criminal trial hedged about with the procedural safeguards of criminal process. The Commission's practice is in striking contrast, in that it provides no safeguards whatever against the suppression of the nonobscene, and therefore constitutionally protected, matter. It is a form of regulation that creates hazards to protected freedoms markedly greater than those that attend reliance upon the criminal law." 372 U.S. at 66–70, 83 S.Ct. at 639.

■ The City contends that the Council, in making its determination of obscenity after an open hearing at which plaintiff was represented by counsel, was acting in a judicial capacity and therefore the exhibits then before the Council were "judicially determined" to be obscene as required by Freedman v. Maryland, 380 U.S. 51, 58, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965).

The Council's procedure, however, did not include the procedural safeguards necessary to ensure proper sensitivity to freedom of expression. The burden of proof, for example, was placed upon the bookseller, whereas the burden of proof in a criminal case can properly be placed only upon the prosecution. Freedman v. Maryland, 380 U.S. at 58, 85 S.Ct. at 734. Also, it is clear from the transcript of the hearing in this case that the Council did not consider itself a judicial body, nor did it consider itself bound by the due-process standards applicable in a court of law. Furthermore, the Council did not consider the First Amendment implications of its licensing act.

The City contends that no prior restraint of speech or press occurred in this case, because no administrative restrictions were imposed and no seizures were made prior to the City Council hearing. However, the Council itself

acted as the administrative censor in refusing to renew plaintiff's license. The purpose of the refusal to license was to suppress publications without the necessity of a court trial. This is prior restraint in its classic form.

The City also urges that the court should not require the City of Portland to license a public nuisance. But this argument is circular, and it begs the question of whether traditional nuisance-regulation is consistent with First Amendment rights. It is one thing to abate the sale of filthy food and another to abate the sale of filthy books. The food business is not protected by the First Amendment. Smith v. California, 361 U.S. 147, 152–153, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959).

It is true that this court's judgment will give the plaintiff and others similarly situated a right to a business license upon the payment of the prescribed fee, but this result merely eliminates presale censorship. The free flow of ideas has special protection. Strasser v. Doorley, 432 F.2d 567 (1st Cir., 1970). Censorship by any name cannot survive unless the scheme satisfies the First Amendment as construed by the Supreme Court. The scheme involved in this case has been struck down every time it has reached that tribunal. See, e. g., Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 83 S.Ct. 631 (1963), and cases cited therein.

I find that Emergency Ordinance No. 130172 of the City of Portland is unconstitutional on its face. As applied to the plaintiff, the inherent unconstitutionality justifies injunctive relief. The City is permanently enjoined from prosecuting the plaintiff for operating its business without a license, so long as the plaintiff tenders the license fee and violates no legitimate public-safety ordinance.

This opinion shall constitute findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).