NATCO THEATRES, INC., Plaintiff,

v.

Bruce RATNER, as Commissioner of Department of Consumer Affairs of the City of New York, Allen G. Schwartz, as Corporation Counsel for the City of New York and Robert McGuire, as Police Commissioner of the City of New York, Defendants.

No. 78 Civ. 5391 (GLG).

United States District Court,
S. D. New York.

Jan. 12, 1979.

As Amended Feb. 5, 1979.

OPINION

GOETTEL, District Judge:

In this action brought under 42 U.S.C. § 1983, the plaintiff, Natco Theatres, Inc., is challenging the constitutionality of New York City's licensing scheme for motion picture theatres,[1] seeking both declaratory and injunctive relief. Plaintiff, the lessee and operator of the Bryant Theatre in New York's Times Square area, has stated its intention of exhibiting "sexually explicit" films. It contends that enforcement of the licensing law would unconstitutionally infringe its rights under the First Amendment. The defendants, the New York City Commissioner of the Department of Consumer Affairs, Police Commissioner, and Corporation Counsel, have moved to dismiss the complaint.

After argument on an order to show cause, this Court issued a temporary restraining order enjoining enforcement of the relevant provisions of the licensing ordinance. After further briefing, the plaintiff's motion for a preliminary injunction is now ready for decision.

I

The ordinance challenged in the instant case is the successor to an earlier licensing ordinance declared by the courts to be an unconstitutional prior restraint on First Amendment rights.[2] The new ordinance attempts to deal with the problems found in the old law by providing "specific guidelines" for the issuance, renewal, suspension and revocation of movie theatre licenses.[3]

Kassner & Detsky, New York City, Herbert S. Kassner, New York City, of counsel, Ralph J. Schwarz, Jr., New York City, for plaintiff.

Allen G. Schwartz, Corp. Counsel, New York City, for defendants; Ira L. Blankstein, Joseph I. Lauer, New York City, of counsel.

1. Sections B32–22.0 through B32–26.0 of Title B, Article 2, Chapter 32 of the Administrative Code of the City of New York (the "ordinance").

2. *Avon 42nd Street Corp. v. Meyerson,* 352 F.Supp. 994 (S.D.N.Y.1972). A companion provision, relating to "peep shows," was also held unconstitutional by both federal, *414 Theatre Corp. v. Murphy,* 360 F.Supp. 34 (S.D.N.Y. 1973), *aff'd* 499 F.2d 1155 (2d Cir. 1974), and state, *People v. Mitchell,* 74 Misc.2d 1053, 346 N.Y.S.2d 495 (N.Y.C.Cr.Ct.1973), courts.

These ordinances were held unconstitutional because of their failure to provide the Commissioner of the Department of Consumer Affairs with ascertainable standards by which to exercise his power to issue, suspend, or revoke licenses.

3. Report of the Committee on Consumer Affairs in Favor of Approving and Adopting as Amended a Local Law to Amend the Administrative Code of the City of New York, in Relation to the Licensing of Exhibitions and Performances and Motion Picture Exhibitions.

Under the terms of the present ordinance the Commissioner of the Department of Consumer Affairs may deny, suspend or revoke a license only after notice and a hearing and only upon a finding that at least one of eight enumerated conditions has occurred.[4] These conditions include, among others, a failure of the applicant to satisfy the ordinance's disclosure provisions and a prior conviction of the applicant or the business's principals (including all shareholders holding ten percent or more of its stock) for any one of a number of crimes.[5]

The licensing ordinance went into effect in December of 1977. On May 10, 1978, a letter was sent by the Department of Consumer Affairs to theatre operators informing them of the licensing requirements. The letter stated: "A strict program of enforcement is about to begin, and the strongest possible actions may be taken against any enterprises that are operating without appropriate licenses."[6] Those found to be in violation of the law are subject to both criminal and civil (including injunctive) sanctions. The plaintiff alleges, and the defendant does not deny, that several criminal summonses have already been served upon various theatres for noncompliance.

Plaintiff has not applied for, nor does it wish, under the terms of the present ordinance, to apply for a license. Plaintiff now fears that as a result it will become a target for enforcement of the ordinance soon after it reopens its theatre.

## II

This Court must first decide whether plaintiff has the requisite standing and presents an actual "case or controversy" as mandated by the Constitution. As noted in *Abele v. Markle,* 452 F.2d 1121, 1124 (2d Cir. 1971), "[t]he existence of a case or controversy depends upon whether the persons seeking relief have alleged a sufficient personal stake in the outcome to assure that the court will be called upon to resolve real issues between genuine adversaries rather than merely to give advisory opinions with respect to abstract or theoretical questions." *See Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962).

■ The plaintiff has not, as yet, applied for, and thus has never been denied, a license, nor has it ever been subject to any of the sanctions of the ordinance. This, however, does not deprive it of standing. It has been held consistently that such failure to apply for a license, even if that license could have been obtained, does not preclude a party from challenging the constitutionality of a licensing ordinance on its face. *Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 151, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969); *Freedman v. Maryland,* 380 U.S. 51, 56, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965); *414 Theatre Corp. v. Murphy,* 360 F.Supp. 34 (S.D.N.Y.1973), *aff'd,* 499 F.2d 1155 (2d Cir. 1974). As was stated by the Supreme Court in *Shuttlesworth, supra* at 151, 89 S.Ct. 935, quoting from *Jones v. Opelika,* 316 U.S. 584, 602, 62 S.Ct. 1231, 1242, 86 L.Ed. 1691 (Stone, C. J., dissenting), *adopted per curiam on rehearing* 319 U.S. 103, 104, 63 S.Ct. 890, 87 L.Ed. 1290: "The Constitution can hardly be thought to deny to one subjected to the restraints of such an ordinance the right to attack its constitutionality, because he has not yet yielded to its demands."

G.O. No. 103—Int. No. 1061–A. Minutes of the New York City Council, November 29, 1977.

**4.** The eight conditions are set out in section B32–26.0 of the ordinance.

**5.** While section B32–25.0 authorizes the Commissioner to "pass upon the character of the applicant," such authority is now, unlike in the previous ordinance, limited by the eight enumerated conditions of section B32–26.0, and no license may be denied an applicant except upon the occurrence of at least one of those factors. While there may still be some problem of excessive discretion in this ordinance as it now stands, the Court believes that this can be cured by state court interpretation and need not be considered at this time.

**6.** Letter from the Department of Consumer Affairs of the City of New York to "Theatre Operators" (May 10, 1978) (plaintiff's Exhibit A).

Similarly, the fact that plaintiff has not as yet been subject to any of the sanctions of the ordinance does not deprive it of standing in light of the circumstances in this case. The plaintiff has received an official letter from the Department of Consumer Affairs threatening enforcement against any theatre operating without a license. Other similarly situated theatres have apparently already been served with criminal summonses. Unlike in *St. Martin's Press, Inc. v. Carey,* No. 77–7603, slip op. at 5356 (2d Cir. Jan. 10, 1979), the instant ordinance clearly applies to the plaintiff, and, due to the nature of the movies plaintiff plans to offer, it is a likely target for enforcement. Under such circumstances, this Court does not feel it "necessary that [plaintiff] first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Steffel v. Thompson,* 415 U.S. 452, 459, 94 S.Ct. 1209, 1216, 39 L.Ed.2d 505 (1974). *See Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976);[7] *Police Department of Chicago v. Mosley,* 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972) (standing based upon threat of enforcement made to federal plaintiff); *Boe v. Colello,* 438 F.Supp. 145, 153 (S.D.N.Y.1977). Plaintiff has presented this Court with a claim which "cannot be characterized as 'imaginary or speculative.'" *Steffel v. Thompson, supra* at 459, 94 S.Ct. at 1215, quoting *Younger v. Harris,* 401 U.S. 37, 42, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

For the foregoing reasons the Court finds that there exists an actual "case or controversy" sufficient to make this case justiciable.

■ The next question to consider is whether in light of the doctrine of *Younger v. Harris, supra,* this Court should decline to exercise jurisdiction. At this time there is no state proceeding pending which plaintiff seeks to have enjoined. Nor will this case disturb the results of a prior state action. It has been held that where a real threat of prosecution exists a federal court may grant injunctive relief without regard to *Younger* principles. *Wooley v. Maynard,* 430 U.S. 705, 709–710, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977); *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 930–931, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975). This Court may take jurisdiction over this action.

■ Nor must the Court abstain from the exercise of its jurisdiction under the *Pullman* abstention doctrine. *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). *Pullman* abstention is appropriate when the challenged state ordinance is susceptible to a limiting construction by a state court so as to avoid the constitutional infirmity. *See, Zwickler v. Koota,* 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); *Pharmaceutical Society of New York v. Lefkowitz,* 586 F.2d 953 (2d Cir. 1978). However, "[w]here there is no ambiguity in the state statute, the federal court should not abstain but should proceed to decide the federal constitutional claim." *Wisconsin v. Constantineau,* 400 U.S. 433, 439, 91 S.Ct. 507, 511, 27 L.Ed.2d 515 (1971). Thus the state courts do not have to be given the first opportunity in all instances to review state statutes. *See Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Abstention has been held to be particularly inappropriate when an ordinance is challenged as facially invalid under the First Amendment. *Citizens For a Better Environment, Inc. v. Nassau County,* 488 F.2d 1353, 1362 (2d Cir. 1973). The New York City licensing ordinance challenged in the instant case is clear on its face. This Court can see no construction which could be put

---

7. The Court held in *Craig*: "The legal duties created by the statutory section under challenge are addressed directly to vendors such as appellant. She is obliged either to heed the statutory discrimination, thereby incurring a direct economic injury through the constriction of her buyers' market, or to disobey the statutory command and suffer . . . 'sanctions and perhaps loss of license.' . . . This Court repeatedly has recognized that such injuries establish the threshold requirements of a 'case or controversy' mandated by Art. III." 429 U.S. at 194, 97 S.Ct. at 455.

on the law by the state courts which could either avoid or modify the constitutional issues presented.[8] We therefore decline to abstain.

### III

■ It has long been established that motion pictures are a form of expression protected by the First Amendment. *Interstate Circuit, Inc. v. Dallas,* 390 U.S. 676, 88 S.Ct. 1298, 20 L.Ed.2d 225 (1968); *Kingsley Pictures Corp. v. Regents,* 360 U.S. 684, 79 S.Ct. 1362, 3 L.Ed.2d 1512 (1959); *Joseph Burstyn, Inc. v. Wilson,* 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098 (1952). It has also been held consistently by the Supreme Court that although a system of prior restraint is not unconstitutional per se, such a system "comes to this Court bearing a heavy presumption against its constitutional validity." *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 558, 95 S.Ct. 1239, 1246, 43 L.Ed.2d 448 (1975); *Organization for a Better Austin v. Keefe,* 402 U.S. 415, 419, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1971); *Bantam Books v. Sullivan,* 372 U.S. 58, 70, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963); *Near v. Minnesota,* 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931). Any attempt to regulate presumptively protected expression must be done with precision, *Interstate Circuit, Inc. v. Dallas,* 390 U.S. at 682, 88 S.Ct. 1298; *NAACP v. Button,* 371 U.S. 415, 438, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); in order not to "sweep unnecessarily broadly and thereby invade the area of protected freedoms." *NAACP v. Alabama,* 377 U.S. 288, 307, 84 S.Ct. 1302, 1314, 12 L.Ed.2d 325 (1964); *See Police Department of the City of Chicago v. Mosley,* 408 U.S. 92, 101, 92 S.Ct. 2286, 33 L.Ed.2d 812 (1972); *Aptheker v. Secretary of State,* 378 U.S. 500, 508, 84 S.Ct. 1659, 12 L.Ed.2d 992 (1964); *Shelton v. Tucker,* 364 U.S. 479, 488–489, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960).

■ Under the terms of section B32–26.0 of the ordinance, the commissioner may refuse to issue a license only after notice and hearing and only upon a finding that at least one of eight enumerated conditions has occurred. Paragraph Five provides that the commissioner may refuse a license if it is found that:

"the applicant, licensee, its officers, principals, directors and stockholders owning more than ten per cent of the stock of the corporation have been conviced to [sic]:

(A) any of the following offenses and there is a direct relationship between the offense and the conduct of a motion picture theatre:

(i) an offense within article two hundred and [sic] the penal law relating to bribery involving public servants;

(ii) a felony within article two hundred ten of the penal law relating to perjury;

(iii) an offense within article two hundred thirty of the penal law relating to prostitution offenses;

(iv) an offense within article two hundred forty-five of the penal law relating to offenses against public sensibilities;

(v) an offense within section 260.20 of the penal law relating to unlawfully dealing with a child;

(B) any other offense which is a felony under the laws of this state or a crime committed in violation of the laws of any other jurisdiction which if committed in this state would be a felony;

(C) any offense which is a misdemeanor involving the premises on or in which the licensed business is to be conducted;"

Under this provision a license may be denied if the applicant or one of its officers, principals, directors or ten percent stock-

8. In a prior action involving part of the former New York City licensing law the district court chose to abstain from exercising its jurisdiction so as to permit the matter to be litigated in state court. After the state courts had had such an opportunity, *see City of New York v. S&H Book Shop, Inc.,* 41 App.Div.2d 637, 341 N.Y.S.2d 292 (1st Dept. 1973), the district court reasserted jurisdiction upon a renewed application for relief since the "state courts have had ample opportunity to consider the question in related cases and have declined to do so." *414 Theatre Corp. v. Murphy,* 360 F.Supp. at 36.

holders has been convicted of any of a host of criminal offenses, both related and unrelated to the operation of a movie theatre. Thus a prior conviction of one of those parties for violating the state obscenity law,[9] which involved the premises, or a conviction for violating the federal obscenity laws,[10] would likely result in the denial of a license. Similarly, a plain reading of section B32–26.0, subd. a, par. 5(B) would indicate that *any* offense which would be a felony if committed in New York, including such disparate crimes as assault in the first or second degree,[11] and forgery in the first or second degree,[12] could be the basis for a license denial.

In the landmark case of *Near v. Minnesota*, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931), the Supreme Court was faced with a statute under which future publication of a newspaper could be suppressed because of past publication of scandalous and defamatory material.[13] In holding the statute to be an unconstitutional prior restraint ("the essence of censorship"), the Court noted: "The fact that the liberty of the press may be abused by miscreant purveyors of scan-

dal does not make any less necessary the immunity of the press from previous restraint in dealing with official misconduct." The Court concluded that the appropriate remedy when dealing with an alleged abuse by a party of its privileges under the First Amendment is subsequent punishment, if available, for the act, and not the placing a prior restraint on publishing itself.

█ A regulatory scheme under which a license necessary to the exercise of First Amendment rights may be denied or revoked because of a past conviction for any felony (and for certain misdemeanors), constitutes a system of prior restraint. Such a scheme is constitutionally suspect and subject to the closest scrutiny. Faced with such systems of restraint the highest courts of three states, California, *Perrine v. Municipal Court*, 5 Cal.3d 656, 97 Cal.Rptr. 320, 488 P.2d 648 (1971), *cert. denied*, 404 U.S. 1038, 92 S.Ct. 710, 30 L.Ed.2d 729 (1972),[14] Washington, *Seattle v. Bittner*, 81 Wash.2d 747, 505 P.2d 126 (1973),[15] and Minnesota, *Alexander v. City of St. Paul*, 303 Minn. 201, 227 N.W.2d 370 (1975)[16] have held li-

9. Under N.Y. Penal Law § 235.05 (McKinney, 1967) a person is guilty of obscenity when:
   "Knowing its content and character, he:
   1) Promotes, or possesses with intent to promote, any obscene material; or
   2) Produces, presents or directs an obscene performance or participates in a portion thereof which is obscene or which contributes to its obscenity.
   Obscenity is a class A misdemeanor."

10. The federal obscenity laws include 18 U.S.C.:
   § 1461. Mailing obscene or crime-inciting matter.
   § 1462. Importation or transportation of obscene matters.
   § 1463. Mailing indecent matter on wrappers or envelopes.
   § 1464. Broadcasting obscene language.
   § 1465. Transportation of obscene matters for sale or distribution.

11. N.Y.Penal Law §§ 120.05, 120.10 (McKinney, 1975).

12. N.Y. Penal Law §§ 170.10, 170.15 (McKinney, 1975).

13. Chapter 285 [1925] of the Session Laws of Minnesota, Section 1, read, in pertinent part, that anyone (individual or firm):

"engaged in the business of regularly or customarily producing, publishing or circulating, having in possession, selling or giving away
   (a) an obscene, lewd and lascivious newspaper, magazine, or other periodical, or
   (b) a malicious, scandalous and defamatory newspaper, magazine or other periodical, is guilty of a nuisance, and all persons guilty of such nuisance may be enjoined, as hereinafter provided."

14. Under the terms of the California ordinance a person could be denied a license to operate a bookstore as a result of a past conviction for any of certain enumerated crimes.

15. The Washington ordinance mandated denial of a license to operate a theatre if the applicant, or any of its officers (if a corporation) had within ten years of the application been convicted of a felony or a misdemeanor involving moral turpitude or intent to defraud.

16. The Minnesota ordinance permitted rescission of a license to operate a theatre if the licensee, owner, manager, lessee or one of the employees or a person with a financial interest in the theatre had been convicted of an obscenity offense which was relevant to the operation of the theatre.

censing ordinances to be unconstitutional. In each case the court held it impermissible to deny a person the right to exercise a fundamental freedom (by denying a license to operate a First Amendment related business such as a bookstore or movie theatre) solely upon the ground that that person has suffered a prior criminal conviction. In such situations the appropriate remedy is not to inhibit the right to sell a book or exhibit a movie, but rather, where applicable, to prosecute for violation of the obscenity laws. *See Oregon Bookmark Corp. v. Schrunk*, 321 F.Supp. 639 (D.Or.1970) (holding unconstitutional a municipal ordinance under which all establishments exhibiting obscene material could be declared to be public nuisances and which could thereby be abated by the city council). *Cf. Universal Amusement Co. v. Vance*, 559 F.2d 1286 (5th Cir. 1977), *reh. granted* 559 F.2d 1303. *See also People v. Taub*, 37 N.Y.2d 530, 375 N.Y.S.2d 303, 337 N.E.2d 754 (1975).

Paragraph 5 of section B32–26.0, subd. a of the challenged ordinance suffers from the same infirmities as did the ordinances found to be unconstitutional in *Perrine, Bittner* and *Alexander*. This Court is now faced with a new attempt by a municipality to utilize its licensing authority (by creating a standard based upon prior conduct) in order to rid itself of undesirable, though not unsafe, establishments. In so doing, the City of New York has created a system of prior restraint that cannot survive constitutional scrutiny.[17]

The City has argued that the power to deny or revoke a theatre license because of a prior conviction "which tends to show moral or intellectual unfitness" comes within its traditional authority to protect the public health, safety and well-being.[18] But as the court noted in *Oregon Bookmark Corp. v. Schrunk*, 321 F.Supp. at 642: "It is one thing to abate the sale of filthy food and another to abate the sale of filthy books. The food business is not protected by the First Amendment." When licensing an activity protected by the First Amendment the City's authority is far more circumscribed. The City may not, as it has tried to do, utilize its licensing power to deprive a party of the right to exercise a constitutionally protected right solely because of past misconduct.

Nor can this Court accept the City's contention that the theatre licensing law read *in pari materia* with sections 752 and 753 of the New York Corrections Law,[19] can be

---

**17.** In enacting a provision so similar to ones found unconstitutional by the highest courts of three separate states this Court is led to wonder, as did the Court of Appeals in *414 Theatre Corp. v. Murphy*, 499 F.2d at 1158, "whether the threat of the ordinance is not of more concern to the City than the validity."

**18.** The cases which have been cited by the City to support this position pertain to state authority to license lawyers, *Matter of Glucksman*, 57 A.D.2d 205, 394 N.Y.S.2d 191 (1st Dept. 1977); and pharmacists, *Matter of Mandel v. Board of Regents*, 250 N.Y. 173, 164 N.E. 895 (1928); or to qualifications which have been mandated for issuance of a gun permit, *United States v. Matassini*, 565 F.2d 1297 (5th Cir. 1978), and not to the licensing of an activity protected by the First Amendment.

**19.** N.Y.Correc.Law §§ 752, 753 (McKinney Supp.1978–79). In pertinent part those sections read:

§ 752. Unfair discrimination against persons previously convicted of one or more criminal offenses prohibited.

No application for any license or employment, to which the provisions of this article are applicable, shall be denied by reason of the applicant's having been previously convicted of one or more criminal offenses, or by reason of a finding of lack of "good moral character" when such finding is based upon the fact that the applicant has previously been convicted of one or more criminal offenses, unless:

(2) the issuance of the license or the granting of the employment would involve an unreasonable risk to property or to the safety or welfare of specific individuals or of the general public.

§ 753. Factors to be considered concerning a previous criminal conviction; presumption

1. In making a determination pursuant to section seven hundred fifty-two of this chapter, the public agency or private employer shall consider the following factors:

(a) The public policy of this state, as expressed in this act, to encourage the licensure and employment of persons previously convicted of one or more criminal offenses.

(b) The specific duties and responsibilities necessarily related to the license or employment sought.

given so limiting a construction as to be able to survive constitutional scrutiny. The City argues that if those sections, and the challenged ordinance, are so read, then a license could not be denied because of a prior conviction unless there is a direct relationship between the offense and the license sought, or if issuing such license would pose a risk to the public health, safety or welfare. There is, however, no need to reach the question of whether such construction should be given since even if the Court were to accept the defendants' argument the ordinance would still fall as an unconstitutional prior restraint. Under this limited reading of the ordinance, for example, a prior obscenity conviction (as for exhibiting obscene films) would still be a ground to deny a license, since such conviction could be said to bear a direct relationship to the license sought. But to deny a person the right to exercise rights provided by the First Amendment because of past abuse of those rights is precisely the type of infringement on a fundamental freedom which the courts have consistently struck down.

■ A system of prior restraint based upon past convictions can only be sustained if it is shown that granting a license to an individual with such a record would present a clear and present danger of a serious substantive evil. *Perrine v. Municipal Court*, 5 Cal.3d at 664, 97 Cal.Rptr. at 324, 488 P.2d at 654. The Court need not reach the question whether this standard could be met were the City to draft a narrow ordinance under which certain non-speech relat-

ed crimes (for example arson or criminal negligence) would serve as the basis for denying a license. As the licensing ordinance now stands, the City has not even attempted to make such a showing of clear and present danger. This Court, therefore, holds paragraph 5 of section B32–26.0, subd. a, Article 2, Chapter 32 of the Administrative Code of the City of New York unconstitutional on its face.[20]

## IV

[10] Another basis for denying a license under the ordinance is failure on the part of the applicant to satisfy the disclosure requirements contained in paragraph 1 of section B32–26.0, subd. a. Under the terms of that provision the Commissioner may deny a license if it is found that:

"the applicant, licensee, its officers, principals, directors and stockholders owning more than ten percent of the outstanding stock of the corporation have not submitted complete and accurate information required by the department in connection with:

(A) an application for a license or renewal thereof;

(B) an application for the approval of a change of ownership;

(C) the furnishing of a record of convictions for offenses as provided in paragraph five of this subdivision;

(D) the furnishing of financial information and records by the applicant, licensee, its officers, principals, directors and stockholders owning more

(c) The bearing, if any, the criminal offense or offenses for which the person was previously convicted will have on his fitness or ability to perform one or more such duties or responsibilities.
(d) The time which has elapsed since the occurrence of the criminal offense or offenses.
(e) The age of the person at the time of occurrence of the criminal offense or offenses.
(f) The seriousness of the offense or offenses.
(g) Any information produced by the person, or produced on his behalf, in regard to his rehabilitation and good conduct.

(h) The legitimate interest of the public agency or private employer in protecting property, and the safety and welfare of specific individuals or the general public.

20. The plaintiff has stated its intention of showing "sexually explicit" motion pictures. Should any of those films be adjudged obscene and thus not entitled to First Amendment protection, *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973); *Paris Adult Theatres v. Slaton*, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973); *Roth v. United States*, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), the City could, at that point, restrain the showing of those obscene films and punish those found guilty of exhibiting them.

than ten percent of the outstanding stock of the corporation concerning the source of funds used or intended to be used in the operation of the licensed business and the amount of total funds each such individual has invested in the business."

The plaintiff contends that forcing it to divulge the information called for by the ordinance would have the effect of infringing upon its right of association protected by the First Amendment. In this regard it has been held by the Supreme Court that, "compelled disclosure, in itself, can seriously infringe on privacy of association and belief guaranteed by the First Amendment." *Buckley v. Valeo*, 424 U.S. 1, 64, 96 S.Ct. 612, 656, 46 L.Ed.2d 659 (1976). *See Gibson v. Florida Legislative Comm.*, 372 U.S. 539, 83 S.Ct. 889, 9 L.Ed.2d 929 (1963); *NAACP v. Button*, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); *Shelton v. Tucker*, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960); *NAACP v. Alabama*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958); *Bursey v. United States*, 466 F.2d 1059 (9th Cir. 1972); *Figari v. New York Telephone Co.*, 32 A.D.2d 434, 303 N.Y.S.2d 245 (2d Dept. 1969). Similarly, the Court has held it "immaterial whether the beliefs sought to be advanced by association pertain to political, economic, religious or cultural matters." *NAACP v. Alabama, supra,* at 460, 78 S.Ct. at 1171.

■ In order for a governmental instrumentality to be constitutionally able to infringe upon this right it is necessary that there be shown a substantial relationship between the information sought to be disclosed and a significant governmental interest to be furthered by such disclosure. *Buckley v. Valeo*, 424 U.S. at 64, 96 S.Ct. 612; *Gibson v. Florida Legislative Comm.*, 372 U.S. at 546, 83 S.Ct. 889; *NAACP v.*

*Alabama*, 357 U.S. at 463, 78 S.Ct. 1163. This strict standard has been enunciated by the Supreme Court as a result of its fear of the effect disclosure would have on individuals and groups involved in the advocacy of unpopular political ideas.[21] Such a strict standard need not necessarily apply when the type of association involved is one in which individuals have joined together for the purpose of engaging in profit making activity (as opposed to advocacy of ideas) and when the speech in question is that which was found by the plurality in *Young v. American Mini Theatres*, 427 U.S. 50, 70, 96 S.Ct. 2440, 2452, 49 L.Ed.2d 310 (1976), to be a "type of expression [which] is of a wholly different, and lesser, magnitude than the interest in untrammeled political debate." It is not necessary, however, to decide at this time what the appropriate standard in this situation should be since regardless of the criteria used the disclosure provision as it now stands is too broad to be upheld. This is particularly apparent when the provision is read in conjunction with that part of the ordinance which the Court has found to be an unconstitutional prior restraint.

It has been held that when a statute involves infringement on First Amendment rights "[t]he breadth of [that] legislative abridgement must be viewed in the light of less drastic means for achieving the same basic purpose." *Shelton v. Tucker*, 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231 (1960). Thus, while the Court believes that the City may be able, in a more narrowly drawn ordinance, and upon a greater showing of governmental interest than was presented as to this provision, to require disclosure of unidentified principles and such other information as could be *specifically* related to the need to insure the safe and lawful operation of a movie theatre,[22]

---

**21.** This standard was enunciated in cases such as *Buckley v. Valeo, supra,* which dealt with disclosure of the names of political campaign contributors, and *Gibson v. Florida Legislative Comm., supra,* and *NAACP v. Alabama, supra,* which dealt with disclosure of N.A.A.C.P. membership lists. *See Shelton v. Tucker*, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960); *Talley*

*v. California*, 326 U.S. 60, 80 S.Ct. 536, 4 L.Ed.2d 559 (1960).

**22.** A statute requiring disclosure of certain, limited, types of crimes, such as arson, criminal negligence, or promoting prostitution (N.Y. Penal L. §§ 230.15–230.30) and certain limited financial information which would relate to a

the information sought in this provision, as to all convictions covered in Paragraph Five of B32–26.0, subd. a, which, as we noted earlier, do not have to be related to the safe operation of a movie theatre, and as to the source of all funds used or intended to be used by any principle in the operation of the theatre, goes too far.[23] The City in this respect has, in addition, made only a minimal effort to demonstrate the need for such extensive disclosure. The Court therefore holds the disclosure provision of section B32–26.0 of the licensing ordinance to be unconstitutional.[24]

### V

The test to be applied on a motion for a preliminary injunction is clear. *Triebwasser & Katz v. American Tel. & Tel. Co.*, 535 F.2d 1356 (2d Cir. 1976); *Sonestra Int'l Hotels Corp. v. Wellington Associates*, 483 F.2d 247, 250 (2d Cir. 1973). In light of the Court's finding of unconstitutionality as to parts of the ordinance, plaintiff has shown probability of success on the merits. As to irreparable harm the plaintiff has been placed by this unconstitutional ordinance in the position of having to choose between operating its theatre without a license, and thereby subjecting itself to the risk of criminal and civil penalties, or foregoing the exercise of its First Amendment rights. In *414 Theatre v. Murphy*, 499 F.2d at 1160, the court stated:

> "The latter possibility . . . involves a deprivation of [plaintiff's] and the public's first amendment rights to show and to view films, and in itself constitutes irreparable injury justifying injunctive relief, because there is no means to make up for the irretrievable loss of that which would have been expressed. . . .

Moreover, the other option—violating the law to exercise one's constitutional rights and awaiting the sure hand of the law—itself may cause, as it is alleged to cause, irreparable injury both economic . . . and personal . . . .."

See *St. Martin's Press, Inc. v. Carey*, 440 F.Supp. at 1203–1204, (S.D.N.Y.1977), *rev'd on other grounds*, No. 77–7603 (2d Cir. Jan. 10, 1979). Since the Supreme Court has held that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976), the Court finds that plaintiff faces the risk of irreparable injury as a result of the City's unconstitutional ordinance.

### CONCLUSION

In reaching the conclusions stated in this opinion the Court has not been unaware of the problems facing New York City in regards to "adult" movie theatres. The 42nd Street—Times Square Area has become an ugly wormhole in the "Big Apple." The Court is cognizant of the blighting effect such establishments have upon neighborhoods, and would applaud innovative approaches developed by the City to deal with such problems. However, such approaches must be consistent with the dictates of the Constitution. The prior conviction provision of paragraph 1, and the disclosure provision of paragraph 5, both of section B32–26.0, subd. a of Title B, Article 2, Chapter 32 of the Administrative Code of the City of New York have gone beyond permissible constitutional boundaries. Accordingly, the Court denies defendant's motion to dismiss

---

party's ability to meet the cost of operating a safe theatre, such as the existence of any large scale outstanding indebtedness, might, if narrowly drawn, survive constitutional scrutiny.

**23.** The question as to the validity of the financial disclosure provision is, on its face, a close one. Since, however, the Department of Consumer Affairs has given this provision a very broad construction, requiring the filing of extensive and detailed financial data, and such construction has been implicitly upheld by the

state courts, *Matter of Pussycat Cinema v. Ratner*, No. 5764 (N.Y.Sup.Ct., N.Y. County, June 21, 1978) (unreported opinion), the provision, as it has been interpreted, is invalid.

**24.** Plaintiff has also raised equal protection objections to this ordinance. Since, however, the challenged provisions have been found unconstitutional on other grounds, the Court sees no need to reach the equal protection issue.

and grants plaintiff's motion to the extent of enjoining enforcement of those provisions found to be unconstitutional.[25]

SO ORDERED.

25. Despite the fact that plaintiff has challenged all of sections B32–22.0 through B32–26.0 of the ordinance, the Court finds no constitutional violations in the ordinance except as to the provisions discussed in the opinion. There is no doubt that the City has the authority to license movie theatres. *See Matter of Small v. Moss*, 279 N.Y. 288, 18 N.E.2d 281 (1938). Since the unconstitutional provisions are severable, the Court will not disturb the remainder of the ordinance so long as it is interpreted in a manner consistent with this opinion.