Stanley H. MARKS, d. b. a. The Cinema X Theatre, and d. b. a. The Monmouth Street Novelty and Book Store, 721 Vine Street, Cincinnati, Ohio 45202, Plaintiff,

v.

The CITY OF NEWPORT, KENTUCKY et al., Defendants.

No. 1643.

United States District Court,
E. D. Kentucky,
Covington Division.

July 3, 1972.

**676**

Andrew B. Dennison, Cincinnati, Ohio, Richard R. Slukich, Covington, Ky., Charles J. Schear, Newport, Ky., for plaintiff.

Lawrence Riedinger, Jr., William J. Wise, Newport, Ky., for defendants.

## MEMORANDUM

SWINFORD, District Judge.

The plaintiff, a book store and theatre operator in Newport, Kentucky, has attacked the constitutionality of Newport City Ordinances which seek to control the dissemination of pornography through licensing and bond requirements. The record is before the court on the plaintiff's application for injunctive relief. Before reaching the merits of the case it is necessary to determine whether the court would be precluded from accepting jurisdiction because of the anti-injunction doctrine declared in Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

The plaintiff has a long history of litigation both in this court and in the state courts centering around the propriety of his businesses which involve the sale and display of "adult" books and films. Fortunately a recapitulation of those controversies would serve little purpose here, however a skeletal summarization of the events leading up to this case is appropriate. The plaintiff operates the Cinema X Theatre and Monmouth Street Novelty and Book Store in Newport, Kentucky. In July of 1971, the plaintiff's license to operate the book store was revoked. Various legal actions to be discussed at a later point in the memorandum, evolved out of the license revocation and the events surrounding it. On April 17, 1972, the Board of City Commissioners of Newport passed two ordinances requiring, in part, theatre and book store proprietors to post $10,000.00 bonds on the condition that they not violate Kentucky's obscenity laws. Prior to and following the enactment of the April 17th ordinances, which were not effective until May 1, 1972, the plaintiff attempted to procure an occupational license for the operation of the Monmouth Street book store. His applications for such a license were refused. Perhaps the City's refusal was partially motivated by its desire to bring the plaintiff within the application of the new laws to be effective on May 1, 1972. Thereafter on April 21, 1972, police officers of the defendant City closed the book store and placed the plaintiff's clerk under arrest for doing business without a license. Subsequently on April 22, 24, 25 and 26 the defendant by and through its police officers again closed the book store and arrested the clerk for operating without a license. As far as the record shows, no criminal prosecutions have ripened out of the incidents occurring on April 21, 22, 24, 25 and 26, 1972. This action was filed on April 25, 1972.

In Younger v. Harris, the Supreme Court declared that federal courts could

not enjoin pending state criminal prosecutions proceeding under constitutionally questionable state statutes except in extraordinary circumstances where the danger of irreparable loss is both great and immediate, and where there is a threat to the accused's federally protected rights that could not be eliminated by his defense to the prosecution. Although the plaintiff has been involved in several state court prosecutions involving the operation of his book store and theatre, it does not appear that the refusal to renew his revoked license or the closings of the Monmouth Street book store in April of 1972 resulted in any criminal actions against him. There appear to be no state court actions currently in progress, or which were pending at the time this suit was filed, in which the plaintiff could vindicate those constitutional rights claimed to be impinged by ordinances 110.108 and 110.-108(a). In a recent decision by the Supreme Court, Lake Carriers Association v. MacMullan, 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257, it was explained that the Younger decision was premised on "considerations of equity practice and comity in our federal system that have little force in the absence of a pending state proceeding". The Court went on to say that "in that circumstance exercise of federal court jurisdiction ordinarily is appropriate if the conditions for declaratory or injunctive relief are met". The court is of the opinion that the Younger doctrine does not preclude it from accepting jurisdiction in this case.

■■ Where no state court action is pending it is within the court's discretion to abstain from accepting jurisdiction if it believes that the challenged state statute is susceptible to a construction by the state courts that would avoid the federal constitutional questions. It is however, incumbent upon the federal courts to give due respect to a suitor's choice of a federal forum for the hearing of his federal constitutional claims. "(E)scape from that duty is not permissible merely because state courts also

have the solemn responsibility (to protect constitutional rights) equally with the federal courts". Zwickler v. Koota, 389 U.S. 241 at 248, 88 S.Ct. 391, at 395, 19 L.Ed.2d 444 (1967). In light of the court's belief that no construction of the April 17th licensing ordinances by a state court could avoid the constitutional questions, it is the duty of the court to accept jurisdiction in this case.

■ Subsequent to the July 1971 revocation of the plaintiff's license, a judgment was entered against him by the Campbell Circuit Court concluding that the operation of his business was a public nuisance. An appeal from that judgment was perfected to the Court of Appeals of Kentucky wherein the plaintiff, among other things, attacked the constitutionality of the ordinance (110.20) under the authority of which his license was revoked. That appeal is still pending. It would appear, therefore, that the constitutionality of ordinance 110.20, which the plaintiff has also challenged in this complaint, is currently before the Kentucky Court of Appeals. Out of considerations of comity the court feels that it would be improper for it to consider the legality of that particular law. The court believes, however, that ordinances 110.108 and 110.108(a) are sufficiently independent of and separate from the function of 110.20 that they may be considered apart from it. The ultimate decision of the Kentucky Court of Appeals in regard to 110.20 will not affect the decision of this court, nor will the judgment of this court upon the constitutionality of 110.108 and 110.108(a) usurp the decision of the Court of Appeals.

■■ Finally it is the court's opinion that the plaintiff has standing to attack the April 17th ordinances. It could be argued that the plaintiff lacks standing to question their constitutionality inasmuch as he has not been granted or denied a license under their proscriptions. The ordinances did not become effective until May 1, 1972, five days after this suit was filed. The traditional test for determining standing is whether there is a sufficient nexus be-

tween the status of the plaintiff and the deprivations allegedly flowing from the existence of laws being challenged. The mere fact that a law has not been applied against a plaintiff does not deprive him of standing to attack that law. The plaintiff here has adequately alleged and shown that he will sustain a direct and immediate injury as a result of the enforcement of these ordinances. The plaintiff comes within their direct purview and it is clear that they were enacted with the intent of regulating his businesses. The court can make no other conclusion but that the plaintiff is in immediate danger of sustaining direct injury as a result of the enforcement of ordinances 110.108 and 110.108(a). See Wulp v. Corcoran, 454 F.2d 826 (1 Cir. 1972); and Strasser v. Doorley, 432 F. 2d 567 (1 Cir. 1972).

Although ordinance 110.108 applies to theatres and 110.108(a) applies to book stores they are functionally identical. 110.108 reads in pertinent part as follows:

"Every person engaged in the business of conducting a store or shop wherein publications either pictorial or printed are possessed for sale shall pay an annual license tax of $500.00.

"Each applicant for a license under the provisions hereof shall give bond with corporate surety authorized to transact business in the Commonwealth, to the city in the sum of $10,000.00 conditioned that such applicant shall not possess therein for sale or sell any pictorial or printed matter proscribed by KRS 436.101, and such applicant for such license shall be deemed by the issuance and acceptance thereof to permit inspection without charge of the premises and its contents by the license inspector of the city or any of its police officers to ascertain the character of all such pictorial or printed matter possessed by applicant or his agent therein.

"Each applicant for such license shall in writing, subscribed and acknowledged, designate the City Clerk as his agent for process in any civil or criminal action in respect to any matter involving such license as may be issued, including, but not limited to, any civil action upon the bond herein required."

■ The court has no doubt that these ordinances are unconstitutional. It is important to remember at the outset that the fact that the plaintiff may be dealing in obscene matter does not exempt the state from adhering to constitutional mandates. As the court in Sokolic v. Ryan, 304 F.Supp. 213 (1969), noted:

"Obscenity is not protected by the First Amendment. . . . But this does not mean that literature which is in fact obscene is not entitled to the same procedural safeguards that are thrown around non-obscene materials."

The ordinances are constitutionally infirm in several respects, but their most conspicuous flaw is that they constitute a prior restraint on the distribution of published matter. The state or its agencies may not attempt to control in advance published matter that is intended for circulation. The effect of these ordinances is to fetter the book store and theatre licensee with the burden of depositing and risk of forfeiting a $10,000.00 bond—a formidable sum— upon the condition that he not exhibit or sell any material which is proscribed by Kentucky's obscenity laws. The burden of determining what is obscene is shifted to the licensee, and this burden is coupled with the severe penalty of losing $10,-000.00 if the licensee makes the wrong determination. Certainly under such conditions a licensee would be most reluctant to sell or exhibit any matter which was of a questionable nature, and as a consequence legitimate publications would be kept from the public's gaze. In a case involving the censorship of films the Supreme Court concluded that:

". . . the burden of proving that the film is unprotected expression must rest on the censor. . . .

'Where the transcendent value of speech is involved, due process certainly requires . . . that the State bear the burden of persuasion to show that the appellants engaged in criminal speech.'" Freeman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965).

The ordinances are also impermissibly vague. It is impossible to ascertain from the language of the regulations in what manner the bonds would be forfeited, but it must be assumed that requirement of deposit presupposes conditions of default. The defendants suggest that the bond would only be forfeited after a judicial determination that Kentucky's obscenity laws had been violated.* Even if this were the case, the situation is not improved for the initial decision of deciding what is obscene is still coercively placed upon the licensee. The ordinances do not contain any hint as to what procedural safeguards would be followed by the City and guaranteed to the licensee. There is nothing in the ordinances that would prevent the City, by and through its officers, from arbitrarily deciding that a licensee had displayed or sold material in violation of Kentucky's obscenity laws. In short, the language of the ordinances is so susceptible to multiple interpretations that their effect is solely intimidatory. The Supreme Court warned in N.A.A.C.P. v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L. Ed.2d 405 (1963), that:

> "If the line drawn by the decree between the permitted and prohibited activities . . . is an ambiguous one, we will not presume that the statute curtails constitutionally protected activity as little as possible. For . . . standards of permissible statutory vagueness are strict in the area of free expression."

Additionally the court believes that the investigatory powers which the ordinances vest in the police, and the provisions of the ordinances relating to service of process, encroach upon Fourth Amendment rights against unreasonable searches and seizures and Fourteenth Amendment rights of due process. The ordinances provide a form of regulation that, as the Supreme Court stated in Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963), "creates hazards to protected freedoms markedly greater than those that attend reliance upon the criminal law."

As was noted by the court in Sokolic v. Ryan, supra:

> "It would seem to be an anomaly if the courts were to protect freedom of expression from police encroachment by demanding compliance with due process and allow total suppression of such rights by authorities under municipal procedures inconsistent with those applicable to criminal procedures. . . . Recent cases cited above make it clear that suppression of the dissemination of literature can occur only when one sells or offers for sale materials that have been previously declared obscene in an adversary proceeding."

The opinion of the court in Sokolic was concluded with language which this court feels is particularly fitting here:

> "To this sorry pass has come the efforts of state and municipal authorities to stem the pornographic flood which sweeps the land. But this decision does not mean that prosecutions for obscenity are wholly impractical and that the enforcement officers should throw up their hands. Difficult and cumbersome are obscenity prosecutions. Impossible they are not. State officers should not conclude that the First Amendment throws an im-

---

\* The defendants have likened the ordinances to "the time-honored 'bond to keep the peace' . . . (where) Forfeiture is not self-executing". Although the court believes that the presence of First Amendment rights renders the analogy inapplic-able, peace bonds have been held unconstitutional for the reason that they place on the defendant a burden of proving his innocence. Santos v. Nahiwa, 39 LW 2149.

penetrable mantle of protection over obscenity. The Constitution offers no protection to pornography without redeeming literary or artistic qualities. What the courts have done, clumsily perhaps, is to try to strike a balance between private and public rights— the right of an individual to free, legitimate expression, on the one hand, and, on the other, the right of the public to be free from that expression which is obscene. There is nothing to prevent diligent state prosecutors from instituting adversary proceedings before a judicial officer through notice to the distributor and a subpoena duces tecum directed to it with the name of each questionable and challenged publication. Following a judicial determination of obscenity the state authorities may seize and prosecute if the publications and materials are put on sale."

The court will this day enter an order declaring Newport City Ordinances 110.-108 and 110.108(a) unconstitutional and permanently enjoining their enforcement.