CORNFLOWER ENTERTAINMENT, INC., a Utah Corporation, and Randy Taylor, Plaintiffs,

v.

SALT LAKE CITY CORPORATION, a Municipal Corporation in the State of Utah; Roger Cutler, City Attorney of Salt Lake City, State of Utah; Bud Willoughby, Chief of Police of Salt Lake City, Utah; Board of Commissioners of Salt Lake City, State of Utah, including Ted Wilson, Mayor; Glen N. Greener, Jennings Phillips, Jr., Jess Agraz and David C. Campbell, Commissioners, Defendants.*

No. C 79–0276.

United States District Court,
D. Utah, C. D.

March 27, 1980.

* *Editor's Note*: The opinion of the United States District Court, N.D. Texas in Broussard v. United States Postal Service, published in the advance sheets at this citation (485 F.Supp. 777), was withdrawn from bound volume publication at the request of the court.

John H. Weston and G. Randall Garrou, Fleishman, Brown, Weston & Rohde, Beverly Hills, Cal., and Jerome H. Mooney, Mooney & Jorgensen, Salt Lake City, Utah, for plaintiffs.

Paul G. Maughan, Asst. City Atty., Salt Lake City, Utah, for defendants.

## ORDER GRANTING DECLARATORY RELIEF
### (Final Judgment)

ALDON J. ANDERSON, Chief Judge.

In this action the plaintiffs seek declaratory relief and a permanent injunction against Salt Lake City as a result of the City's order revoking the motion picture and business licenses of the plaintiff Cornflower Entertainment, Inc. based on violations of obscenity laws by employees of Cornflower. The parties have waived final argument and have submitted the disputed issues to the court for final resolution. The court has carefully reviewed the briefs and the stipulated statement of facts and is now ready to rule.

### I.

Cornflower Entertainment, Inc. (Cornflower), operates an adult motion picture theatre in Salt Lake City known as Studio Theatre. During the period of May, 1978, to September, 1978, movies were shown at Studio Theatre which resulted in four employees of Cornflower either pleading guilty or being convicted of distributing obscene material in violation of state or municipal law. As a result of their violations, Salt Lake City had served on Cornflower an order to show cause why its motion picture, general business and soft drink licenses should not be revoked pursuant to local ordinances permitting revocation or suspension of licenses for such violations.[1] On May 4, 1979, a hearing was held before a hearing officer wherein evidence and arguments were presented by the parties. On May 8, 1979, the plaintiffs initiated this action which at that time sought a temporary restraining order to prevent any attempts to revoke the plaintiffs' licenses. This court denied the motion for a temporary restraining order after oral argument on May 9, 1979.

On June 7, 1979, the Salt Lake City Board of Commissioners adopted the hearing officer's findings of fact and conclusions of law and ordered that the three licenses mentioned above be revoked for a period of one year. The City subsequently agreed that the revocation order would not be enforced until the court ruled on its validity. Plaintiffs were to seek an expedited hearing on the merits. The movie theatre has remained open during these proceedings.

---

1. The City's order was pursuant to the following two sections of the Revised Ordinances of Salt Lake City. Section 20–1–24 provides in part:

> Any business or regulatory license issued pursuant to the provisions of any ordinance of Salt Lake City may be suspended or revoked by the Board of City Commissioners for a period of time not to exceed one year after a hearing held before said Board or at said Board's direction, upon a finding by the Board of City Commissioners of a violation or conviction of the licensee, operator, agent or any person of any of the following violations which occurred in conjunction with the operation of a licensed business:
>
> (a) A violation of or a conviction for violating any ordinance regulating or governing the business under which said license was granted, or
>
> (b) A violation of or a conviction for violating any other City ordinance or law of the State of Utah which affects the health, welfare or safety of its residents, including but not limited to a public nuisance, and which violation or conviction relates to the business so licensed, or
>
> (c) A violation of or conviction for violating an ordinance which resulted from the operation of the business so licensed. . . .

Section 20–20–11 provides in part:

> Upon a finding by the Board of Salt Lake City Commissioners of a violation, after hearing before said Board, or upon conviction of the licensee, operator, agent, or any person of the following violations occurring in or on the premises licensed pursuant to this chapter, the Board of Commissioners of Salt Lake City may revoke or suspend the license or licenses covering the businesses conducted on such premises, regardless of the ownership thereof, for a period of time up to and including one year:
>
> (a) A violation or conviction of sections [sic] 32–2–10 [distributing obscenity] or section 32–7–7 [exposing minors to harmful materials], Revised Ordinances of Salt Lake City.
>
> (b) A violation of any provision set forth in this chapter.
>
> . . . . .
>
> (e) A violation of any law of the State of Utah or ordinance of Salt Lake City which affects the health, welfare and safety of its residents and which violation occurred as a part of the main business activity licensed under this chapter and not incidental thereto.

## II.

The plaintiffs claim that the order is unenforceable because the ordinances authorizing the revocation of theatre licenses for past obscenity convictions constitute an unconstitutional prior restraint of free speech. The defendants respond, first, that the court should abstain from even considering the plaintiffs' claims on the ground that the state court is the only proper forum to hear them and, second, that the revocation order in this case is constitutional. Thus, the first question is whether or not the court should even hear the case. If abstention is not proper, the next question is whether or not motion picture materials are constitutionally protected free speech. If they are, the court must decide whether the ordinances under attack operate as a prior restraint. Finally, if the ordinances are found to result in a prior restraint, are they unconstitutional under controlling precedent of the United States Supreme Court?

## III.

There are two instances where the abstention doctrine may be applied to enable the court to avoid adjudicating a dispute otherwise justiciable and thereby permitting the state courts to resolve it. First, a federal court should generally abstain from a controversy when there is a pending state action or there has been a failure to exhaust appellate remedies. *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 699 (1971). Second, they should ordinarily refrain from ruling on the constitutionality of a state statute if the state law is unclear and is capable of construction by state courts in a manner that would avoid the constitutional question. *Railroad Commission v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

The court is convinced that neither situation is present here. After the City Board of Commissioners issued its order, there was no pending state proceeding. Nor was there a provision providing for an appeal. The plaintiffs had the choice of initiating an equity suit in state court or activating the suit in federal court that had originally sought a temporary restraining order. There is no present possibility of this court's enjoining a pending state action or annulling the results of a state proceeding for failure of the plaintiffs to pursue an appeal in the state court system. Accordingly, the principles articulated in *Younger* and *Huffman* do not allow the court to abstain from adjudicating the parties' controversy.

That part of the abstention doctrine stemming from the *Pullman* decision is equally inapplicable. The ordinances attacked are clear on their face; the court fails to see how a limiting construction could avoid the constitutional issues. Moreover, the Utah Supreme Court recently reviewed one of the ordinances involved in a similar factual setting, and the ruling did not provide a limiting construction to free the ordinance from constitutional attack. Under these circumstances, when a federal court is presented with the question of the constitutionality of a state law that is clear and certain, abstention is not appropriate. 1A *Moore's Federal Practice* ¶ 0.203[1], at 2106–08 (2d ed.). The court therefore should not abstain from adjudicating the plaintiffs' constitutional claim presented here. Other courts in similar factual situations have reached the same conclusion. *E. g., Natco Theatres, Inc. v. Ratner,* 463 F.Supp. 1124, 1127–28 (S.D.N.Y.1979).

## IV.

The question whether motion pictures are a form of expression entitled to first amendment protections has been resolved by the Supreme Court. Its decisions clearly hold that motion pictures are entitled to all the constitutional protections accorded other kinds of speech.[2] *E. g., Joseph Burstyn, Inc. v. Wilson,* 343 U.S. 495, 501–02, 72 S.Ct. 777, 780, 96 L.Ed. 1098 (1952). The fact that people pay to view movies and a profit is thereby obtained does not alter the protected status of motion pictures. *Id.* Included in the constitutional

2. Material that meets the appropriate obscenity test is, of course, unprotected by the first

amendment. *Miller v. California,* 413 U.S. 15, 23, 93 S.Ct. 2607, 2614, 37 L.Ed.2d 419 (1973).

protections extended to motion pictures is the general prohibition against prior restraint. *Freedman v. Maryland,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965). Therefore, if a prior restraint is present in this case, the mere fact that commercial motion pictures are involved will not be a basis to uphold the ordinances.

### V.

The starting point for a serious examination of whether or not an ordinance acts as a prior restraint is the landmark case of *Near v. Minnesota,* 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931). There the trial court found a newspaper to be in violation of a nuisance statute that prohibited "the business of regularly and customarily . . publishing . . . a malicious, scandalous and defamatory newspaper." As a remedy, the court enjoined the newspaper "from further conducting said nuisance under the name and title of said The Saturday Press or any other name or title." *Id.* at 706, 51 S.Ct. at 627. The United States Supreme Court held that the injunction constituted a "previous restraint." Drawing from the historical meaning of the term previous restraint in past decisions, the Supreme Court held that restraining future publications as a result of the content of past publications is clearly a previous restraint.

The similarity between *Near* and the present case indicates that the ordinances under review operate as a prior restraint. In both cases, as a result of the content of past material, future expression was sought to be halted. Subsequent Supreme Court decisions on prior restraint reinforce such a conclusion. These cases hold that any restraint of future expression because of the content of either past or anticipated future expression constitutes a prior restraint. In *Times Film Corp. v. Chicago,* 365 U.S. 43, 81 S.Ct. 391, 5 L.Ed.2d 403 (1961), the Court considered a Chicago ordinance directed at motion pictures. The ordinance required that a permit for the public exhibition of a motion picture be obtained. A permit could only be received by submitting the motion picture to an examining board which had authority to refuse a permit when certain decency standards were not met. A denial of a permit would therefore be content-based and restrain future showings. The Court treated the ordinance as a prior restraint. *Id.* at 48–49, 81 S.Ct. at 394. *See also Freedman v. Maryland,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965).

In *Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963), the Court held a practice by a Rhode Island commission to be a prior restraint. The Rhode Island legislature created a commission whose practice was to review books and magazines to determine their appropriateness for people under eighteen years of age. The commission would then inform the dealers of the objectionable materials of the commission's findings, request their cooperation and advise them that it was the commission's duty to recommend prosecution of distributors of pornography. The court found that the commission's practice severely intimidated the distribution of material, was based on content and thus was a prior restraint.

In 1971, the Court stated that a prior restraint exists where an "injunction operates, not to redress alleged private wrongs, but to suppress, on the basis of previous publications, distribution of literature 'of any kind' . . . ." *Organization for a Better Austin v. Keefe,* 402 U.S. 415, 418, 91 S.Ct. 1575, 1577, 29 L.Ed.2d 1 (1971).

In 1975, the Court considered a community licensing situation where a municipal board, which managed a city auditorium, denied a request for the use of the auditorium for the production of the musical "Hair." *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975). The board's decision was based on its members' opinion, formed solely from outside reports, that the content of the musical would render its exhibition contrary to the community's best interest. The Court ruled that the board's action constituted a prior restraint, since it was based on the anticipated content of the musical and effectively halted its production. Other licensing schemes have also been held to operate as prior restraints.

*Shuttlesworth v. Birmingham,* 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1967).

Applying the above decisions and their principles to the ordinances in this case mandates the conclusion that the ordinances operate as a prior restraint. The ordinances permit the revocation of a motion picture license because of past obscenity violations, which effectively restrains the exhibition of future movies solely on the basis of the content of past motion pictures. The revocation for a year as applied in this case is a severe restraint under the standards enunciated in the foregoing Supreme Court rulings. The cases establish that the use of licenses in a manner that suppresses future expression because of past expression is a prior restraint. The cases demonstrate further that aiming the restraint at pornographic material, including motion pictures, does not alter the existence of a prior restraint. Thus, ordinances such as the ones here operate as prior restraints. In agreement with this conclusion is nearly every court that has considered an identical or similar situation. *E. g., Natco Theatres, Inc. v. Ratner, supra; Perrine v. Municipal Court,* 5 Cal.3d 656, 97 Cal.Rptr. 320, 488 P.2d 648 (1971), *cert. denied,* 404 U.S. 1038, 92 S.Ct. 710, 30 L.Ed.2d 729 (1972).

## VI.

■ Concluding that the ordinances operate as a prior restraint does not automatically condemn them as unconstitutional. Although the Supreme Court has stated that "[a]ny system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity," *Bantam Books, Inc. v. Sullivan, supra,* 372 U.S. at 70, 83 S.Ct. at 639, the Court has always stated that not all prior restraints are impermissible. *Near v. Minnesota, supra,* 283 U.S. at 716, 51 S.Ct. at 631; *Southeastern Promotions, Ltd. v. Conrad, supra,* 420 U.S. at 558, 95 S.Ct. at 1246. Further inquiry is required to determine if the prior restraint in this case is unconstitutional.

*Near v. Minnesota, supra,* probably best articulates the rationale for the heavy presumption against prior restraints. In striking down the trial court's order enjoining the further publication of a newspaper because of its past offensive content, the Court focused on the historical meaning of freedom of the press and the need for freedom of speech in a free society. The court quoted Blackstone as stating:

The liberty of the press is indeed essential to the nature of a free state; but this consists in laying no *previous* restraints upon publications, and not in freedom from censure for criminal matter when published. Every freeman has an undoubted right to lay what sentiments he pleases before the public; to forbid this, is to destroy the freedom of the press . . . . *Id.* 283 U.S. at 713–14, 51 S.Ct. at 630 (emphasis in original).

The Court recognized that the framers of the Constitution adhered to Blackstone's views that free speech is necessary to a free society and includes prohibiting prior restraints. Madison was quoted:

[T]he great and essential rights of the people are secured against legislative as well as against executive ambition. They are secured, not by laws paramount to prerogative, but by constitutions paramount to laws. This security of the freedom of the press requires that it should be exempt not only from previous restraint by the Executive, as in Great Britain, but from legislative restraint also. *Id.* at 714, 51 S.Ct. at 630.

This historical statement of principles was strongly persuasive that the Constitution demanded a prohibition against nearly all prior restraints. Equally important to the Court was its own view that prior restraints, if allowed, would provide a means to halt the free exchange of ideas. The difficulty of suppressing unprotected speech without inhibiting protected speech further supported a prohibition against restraining speech prior to its utterance except in rare instances. The Court recognized that forbidding prior restraints would permit some offensive expression, but it concluded that the alternative was unduly risky and unacceptable. Again Madison was quoted with approval.

Some degree of abuse is inseparable from the proper use of everything, and in no

instance is this more true than in that of the press. It has accordingly been decided by the practice of the States, that it is better to leave a few of its noxious branches to their luxuriant growth, than, by pruning them away, to injure the vigor of those yielding the proper fruits. *Id.* at 718, 51 S.Ct. at 632.

Thus, the possibility of abuse by a publisher which might give rise to criminal penalty or civil liability did not justify restraining future publication.

Although the *Near* Court was not faced with any issues in the obscenity area, its principles have been applied in several cases to statutes and practices designed to restrict the distribution of pornography. Part of *Near's* involvement in these cases stems from its statement that some prior restraint of obscene material might be permissible. *Id.* at 716, 51 S.Ct. at 631. As a result of these cases, the limits on permissible prior restraint of sexual material have been extensively developed.

Quite early in this development, the Court upheld a New York statute that permitted the enjoining of material after a court determined it to be obscene. *Kingsley Books, Inc. v. Brown*, 354 U.S. 436, 77 S.Ct. 1325, 1 L.Ed.2d 1469 (1957). This decision is consistent with the Court's holding issued the same day that material which meets the obscenity standard is unprotected by the first amendment. *Roth v. United States*, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). A constitutional prior restraint is therefore the prohibiting of future dissemination of material which has previously been judicially determined to be obscene.

In 1961 the Court considered a claim that an ordinance requiring the submission of motion pictures prior to public exhibition for possible censorship was an unconstitutional prior restraint. *Times Film, Inc. v. Chicago, supra.* The basis of petitioner's claim was that the prohibition against prior restraints allowed the exhibition of all material at least once. As stated earlier, the Court recognized that the ordinance constituted a prior restraint. However, the narrow ruling of the Court rejected the petitioner's claim and held that requiring submission of motion pictures for examination prior to exhibition is not unconstitutional on its face.

Four years later the Court had occasion to expand the above holding. In *Freedman v. Maryland, supra*, a person was convicted of exhibiting a motion picture without first submitting it to proper authorities for examination under a statute similar to the one involved in *Times Film.* The Court held that requiring the submission of material to a censorship board is a permissible prior restraint only if, first, the censor has the burden to institute judicial proceedings and prove that the material is unprotected, second, any restraint prior to the judicial review must be limited to preservation of the status quo and for the shortest period compatible with sound judicial procedure and, third, a prompt final judicial determination on obscenity must be assured. *Id.* 365 U.S. at 58–59, 81 S.Ct. at 399–400. The Court reasoned that since only courts can determine what is unprotected speech, a censorship system should not be allowed effectively to preclude judicial determination by burdening the exhibitor with expense or delay in seeking such a judicial determination. The Court decided that imposing these three procedural safeguards would protect against the dangers of censorship systems.

Decisions prior to *Freedman* required at least some of these safeguards, *Bantam Books, Inc. v. Sullivan, supra*, 372 U.S. at 70–71, 83 S.Ct. at 639, and subsequent cases indicate that no prior restraint can pass constitutional muster without them, *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 53, 93 S.Ct. 2628, 2632, 37 L.Ed.2d 446 (1973); *Blount v. Rizzi*, 400 U.S. 410, 91 S.Ct. 423, 27 L.Ed.2d 498 (1971); *Teitel Film Corp. v. Cusack*, 390 U.S. 139, 88 S.Ct. 754, 19 L.Ed.2d 966 (1968). In requiring such a strict standard, the Court is not unaware of the interests of state and local governments. According to the Court, its role is merely to set out the constitutional limits within which local governments are free to act: "It should be clear from the outset that we do not undertake to tell the States

what they must do, but rather to define the area in which they may chart their own course in dealing with obscene material." *Paris Adult Theatre I v. Slaton, supra,* at 413 U.S. 53–54, 93 S.Ct. at 2633. In *Paris Adult Theatre* the Court sanctioned an approach towards controlling obscenity involving civil injunctions.

In one of the most recent treatments of the subject, the Court ruled unconstitutional the prior restraint involved in *Southeastern Promotions, Ltd. v. Conrad, supra.* As was described earlier, the prior restraint there consisted of a community board's denial of permission for the use of a public auditorium for the production of the musical "Hair." The denial was based on the board's opinion that the musical was obscene. The Court reiterated the disfavored status of prior restraints because of their likelihood to suppress protected speech:

> The presumption against prior restraints is heavier—and the degree of protection broader—than that against limits on expression imposed by criminal penalties. Behind the distinction is a theory deeply etched in our law: a free society prefers to punish the few who abuse rights of speech *after* they break the law than to throttle them and all others before hand. It is always difficult to know in advance what an individual will say, and the line between legitimate and illegitimate speech is often so finely drawn that the risks of freewheeling censorship are formidable. *Id.* 420 U.S. at 558–59, 95 S.Ct. at 1246–1247 (emphasis in original).

The Court found the risks of censorship were insufficiently protected against by the procedural requirements of the board's system. Among other infirmities, nothing required a prompt judicial determination as

to the musical's protected or unprotected status. As a result, the system failed to assure that the board's decision would not unduly suppress legitimate expression. The board's decision was, therefore, unconstitutional.

Again the Court laid out the formula for imposing a lawful prior restraint. The Court stated that "a system of prior restraint 'avoids constitutional infirmity only if it takes place under procedural safeguards designed to obviate the dangers of a censorship system.'" *Id.* at 559, 95 S.Ct. at 1247 (quoting *Freedman v. Maryland, supra,* 380 U.S. at 58, 85 S.Ct. at 738). The necessary safeguards established by prior cases were specifically reaffirmed and set out by the Court:

> We held in *Freedman,* and we reaffirm here, that a system of prior restraint runs afoul of the First· Amendment if it lacks certain safeguards: First, the burden of instituting judicial proceedings, and of proving that the material is unprotected, must rest on the censor. Second, any restraint prior to judicial review can be imposed only for a specified brief period and only for the purpose of preserving the status quo. Third, a prompt final judicial determination must be assured. *Id.* 420 U.S. at 560, 95 S.Ct. at 1247.

■ Thus, as it applies here,[3] the rulings of the United States Supreme Court permit the City to impose a prior restraint if the statutory pattern relied upon provides that (1) the City or its representative has the burden to institute judicial proceedings and prove that the material to be exhibited is unprotected; (2) the restraint prior to judicial determination is for a brief period and intended to preserve the status quo; and (3) a prompt final judicial determination on

---

**3.** It is noted that the Supreme Court applies a similar and equally rigorous standard in determining whether prior restraints of material other than obscenity, such as classified documents and pretrial publicity, are constitutional. *Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976); *New York Times Co. v. United States,* 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971) ("Pentagon Papers" case).

Some mention should also be made of the Supreme Court's statements that a prior re-

straint would be permissible if anticipated expression would create a clear and present danger of substantive evil. *Nebraska Press Ass'n v. Stuart, supra,* 427 U.S. at 562, 96 S.Ct. at 2804; *Near v. Minnesota,* 283 U.S. 697, 716, 51 S.Ct. 625, 631, 75 L.Ed. 1357 (1931). This concept is not applicable to this case. It has never been applied to the specific area of obscenity. Further, even if it were held to apply to obscenity, there has been absolutely no showing in this case of a clear and present danger of a substantive evil to justify the prior restraint.

whether or not the material is unprotected is assured.

The ordinances involved in this case provide a system that permits the revocation or suspension of business licenses for a period not to exceed one year upon a finding by the Board of City Commissioners of a violation or conviction of various laws, including those that prohibit the distribution of obscenity and those that affect the health, welfare and safety of the City's citizens and arise from the business's activity. The system so established, far from the pattern approved, allows the revocation of a license to sell or show anything by an involuntary closure for a year of a theatre, bookstore or like establishment based on a past obscenity conviction. This results in a complete suppression of material for a period of one year without regard to whether it is constitutionally protected or not, based solely on past expression. The provisions for a hearing by the Board of City Commissioners, or in some instances its appointed representative, are only intended to assure a hearing on whether violations or convictions have occurred. As such they are wholly inadequate as a compliance with the requirement for a prompt judicial determination on obscenity of the material to be shown.

Thus, the ordinances create a prior restraint that contains none of the conditions necessary to pass constitutional muster. In the effort to restrain obscenity, the ordinances fail to provide any safeguards to prevent legitimate expression from being restrained. Such a failure has condemned prior restraints. As Madison stated: "the vigor of those [branches] yielding the proper fruits" should not be injured in the effort to prune away noxious ones. *Near v. Minnesota, supra,* 283 U.S. at 718, 51 S.Ct. at 632. Accordingly, the ordinances violate the prior restraint standards of the Constitution which have been carefully established over hundreds of years to safeguard freedom of speech.

An impressive number of other courts, twenty-three, have also concluded that the involuntary closure of a motion picture theatre or bookstore for obscenity violations is an unconstitutional prior restraint. *Universal Amusement Co. v. Vance,* 587 F.2d 159, 165–66 (5th Cir. 1978) (en banc); *Genusa v. City of Peoria,* 475 F.Supp. 1199, 1207–09 (C.D.Ill.1979); *Bayside Enterprises, Inc. v. Carson,* 470 F.Supp. 1140 (M.D.Fla.1979); *Natco Theatres, Inc. v. Ratner,* 463 F.Supp. 1124 (S.D.N.Y.1979); *Fehlhaber v. North Carolina,* 445 F.Supp. 130 (E.D.N.C.1978); *Avon 42nd Street Corp. v. Myerson,* 352 F.Supp. 994 (S.D.N.Y.1972); *Marks v. City of Newport,* 344 F.Supp. 675 (E.D.Ky.1972); *Mini Cinema 16 Inc. of Fort Dodge v. Habhab,* 326 F.Supp. 1162 (N.D.Iowa 1970); *Oregon Bookmark Corp. v. Schrunk,* 321 F.Supp. 639 (D.Or.1970); *General Corp. v. State ex rel. Sweeton,* 320 So.2d 668 (Ala. 1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1494, 47 L.Ed.2d 753 (1976); *People ex rel. Busch v. Projector Room Theatre,* 17 Cal.3d 42, 130 Cal.Rptr. 328, 550 P.2d 600, *cert. denied sub nom. Van de Kamp v. Projector Room Theatre,* 429 U.S. 922, 97 S.Ct. 320, 50 L.Ed.2d 289 (1976); *Perrine v. Municipal Court,* 5 Cal.3d 656, 97 Cal.Rptr. 320, 488 P.2d 648 (1971), *cert. denied,* 404 U.S. 1038, 92 S.Ct. 710, 30 L.Ed. 729 (1972); *Mitchem v. State ex rel. Schaub,* 250 So.2d 883 (Fla. 1971); *Sanders v. Georgia,* 231 Ga. 608, 203 S.E.2d 153 (1974); *City of Delevan v. Thomas,* 31 Ill.App. 630, 334 N.E.2d 190 (1975); *State ex rel. Blee v. Mohney Enterprises,* 154 Ind.App. 244, 289 N.E.2d 519 (1973); *State v. A. Motion Picture Entitled "The Bet,"* 219 Kan. 64, 547 P.2d 760, 769–70 (1976); *Parish of Jefferson v. Bayon Landing Ltd, Inc.,* 350 So.2d 158 (La.1977); *Gulf States Theatre of Louisiana, Inc. v. Richardson,* 287 So.2d 480 (La.1974); *Alexander v. City of St. Paul,* 303 Minn. 201, 227 N.W.2d 370 (1975); *Hamar Theatres, Inc. v. City of Newark,* 150 N.J.Super. 14, 374 A.2d 502 (1977); *State ex rel. Field v. Hess,* 540 P.2d 1165, 1170–71 (Okl.1975); *City of Seattle v. Bittner,* 81 Wash.2d 747, 505 P.2d 126 (1973).

A few courts, including the Utah Supreme Court, have upheld an involuntary

closure for past obscenity violations. *106 Forsyth Corp. v. Bishop*, 482 F.2d 280 (5th Cir.), *aff'g* 362 F.Supp. 1389 (M.D.Ga.1972), *cert. denied*, 422 U.S. 1044, 95 S.Ct. 2660, 45 L.Ed.2d 696 (1973); *Bay Area News, Inc. v. Poe*, 364 So.2d 830 (Fla.App.1978); *State ex rel. Cahalan v. Diversified Theatrical Corp.*, 59 Mich.App. 223, 229 N.W.2d 389 (1975), *rev'd*, 396 Mich. 244, 240 N.W.2d 460 (1976); *West Gallery Corp. v. Salt Lake City Board of Commissioners*, 586 P.2d 429 (Utah 1978). These cases, however, are not persuasive authority for the position they endorse. They fail to analyze and draw from the fabric of the Supreme Court's many decisions in this area of the law the clear cut and evident pattern of what must be done before a prior restraint may be permissible. Additionally, two of the decisions have been effectively overruled and the other two rely on one of those decisions now rejected.

The first case to uphold an involuntary closure for past obscenity violations was *106 Forsyth Corp. v. Bishop, supra.* The district court reasoned that the shutdown was a penalty for past abuses and therefore did not constitute a prior restraint. The circuit court affirmed the district court's decision in a conclusory opinion that provided no adequate legal basis for its result. To reason that an involuntary closure of a motion picture theatre for past obscenity violations does not constitute a prior restraint is clearly contrary to the Supreme Court's definition of prior restraint. (See part V above.) Thus, the basis of the *106 Forsyth* district court decision is untenable and the per curiam opinion of the circuit court affirming that decision provides no added justification for its result. Furthermore, an en banc decision in 1978 by the same circuit clearly rejected the decision in *106 Forsyth*. *Universal Amusement Co., Inc. v. Vance*, 587 F.2d 159 (5th Cir. 1978), *aff'd*, —— U.S. ——, 100 S.Ct. 1156, 63 L.Ed.2d 413 (1980). Although the case was ultimately decided on grounds other than an unconstitutional prior restraint, the court stated:

> Read together, Articles 4666 and 4667 clearly create a prior restraint. The stat-

utes allow the state to close, for one year, a theatre that has exhibited obscene films. Unless a bond from $1,000 to $5,000 is posted, the showing of any motion picture is punishable by contempt of court. Thus, future conduct that may fall within the purview of the first amendment is absolutely prohibited after a finding of unprotected present conduct. It was precisely this practice that was condemned by the Supreme Court in the landmark case of *Near v. Minnesota*, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931).

. . . . .

Application of the one-year closing provisions in obscenity cases under the Texas nuisance statutes would constitute an impermissible prior restraint, since the state would be "enjoin[ing] the future operation of a [business] which disseminates presumptively First Amendment protected materials solely on the basis of the nature of the materials which were sold . . . in the past." *Speight v. Slaton*, 356 F.Supp. 1101, 1107 (N.D.Ga.1973) (Morgan, J., dissenting), vacated and remanded, 415 U.S. 333, 94 S.Ct. 1098, 39 L.Ed.2d 367 (1974). Many courts have so held. *Id.* at 165–66.

*106 Forsyth* is, therefore, of little or no support for upholding a theatre closure based on past obscenity violations.

The two lower state court decisions upholding closure actions suffer from the same infirmities that afflict *106 Forsyth*. *Bay Area News, Inc. v. Poe, supra*, adopted the same faulty rationale as *106 Forsyth* and relied heavily on the weight of that decision. *State ex rel. Cahalan v. Diversified Theatrical Corp., supra*, a Michigan appellate court decision, also based its holding on the claim that shutdown orders for obscenity violations are not prior restraints. In addition to being inconsistent with the Supreme Court's definition of prior restraint, the decision was reversed by the Michigan Supreme Court on appeal on other grounds, making it unnecessary for the

court to rule on the first amendment issues. The court pointed out, however, the constitutional weaknesses of such a shutdown order. *State ex rel. Cahalan v. Diversified Theatrical Corp., supra,* 240 N.W.2d at 463 n.15.

■ The Utah Supreme Court's decision upholding an involuntary closure of a motion picture theatre for past obscenity violations merits particular attention. *West Gallery Corp. v. Salt Lake City Board of Commissioners, supra.* The closure action in that case was pursuant to one of the ordinances under review here. Also, because of the overlap in jurisdiction of the state and federal courts, it is important that the state decision be given proper respect so that this court does not unduly interfere with state and local affairs. *Younger v. Harris, supra,* 401 U.S. at 44–45, 91 S.Ct. at 750–751. This court has personal regard for Utah's highest court and respect for its decisions. However, in cases such as this the court has a responsibility to decide constitutional questions properly presented. *Wooley v. Maynard,* 430 U.S. 705, 710, 97 S.Ct. 1428, 1432, 51 L.Ed.2d 752 (1977). In finding the shutdown order valid, the Utah court used the traditional test for determining whether or not an exercise of the state's police power is constitutional. *106 Forsyth* was relied on for the result reached. While the court is sympathetic with the state court's view that there is a legitimate local interest in regulating obscene material, there is no question that the analysis of the Supreme Court cases herein represents the applicable rule under the facts of this case. Those decisions dictate that once a practice or ordinance is identified as a prior restraint its constitutionality must be determined by the high standards associated with prior restraints. The traditional balancing test associated with the exercise of the state's police power is not a correct standard. When the appropriate analysis is applied to the ordinances in dispute, the result reached by the *West Gallery* court cannot stand. The effective overruling of *106 Forsyth,* which occurred after *West Gallery* was decided, also weakens *West Gallery's* conclusion.

The struggle against pornography has seen various methods used to try to eliminate it from the community. Some of these ignore the constitutional dangers of prior restraint of speech. There are methods, however, that are consistent with the Constitution and that can be effective. The teachings of the Supreme Court decisions emphasize the desirability of criminal prosecution as a means to control those who traffic in constitutionally unprotected obscene materials. It is the long experience of this court that there is nothing more effective in deterring criminal conduct than certainty of fine and/or imprisonment, according to the severity of the offense, after an expeditious trial. In Utah, a county attorney under *Utah Code Ann.* §§ 76–10–1204 to –1206, –1214, –1222 or often the United States Attorney under 18 U.S.C. §§ 1461–1465 can bring charges which carry substantial penalties against distributors or exhibitors of obscenity.

Following the court's preparation of the above analysis and conclusions, the Supreme Court filed an opinion in a case similar to the present one. *Vance v. Universal Amusement Co.,* —— U.S. ——, 100 S.Ct. 1156, 63 L.Ed.2d 413 (1980). The decision strongly supports the holding of this court. The Supreme Court ruled that a Texas nuisance statute resulted in an unconstitutional prior restraint of motion pictures. The statute provided that certain habitual uses of premises, including exhibiting obscene material, shall constitute a public nuisance and shall be enjoined. The statute was construed as authorizing an injunction against the future showing of both named and unnamed motion pictures upon a finding by a court of past or present showings of obscene motion pictures. Such an injunction would clearly be a prior restraint and the Court so held. The question of the prior restraint's constitutionality focused on the system's burdens and dangers resulting from a lack of sufficient safeguards. The

Court found that the statute, coupled with the state's rules of civil procedure, could result in the granting of a temporary injunction of indefinite duration on the basis of a showing of probable success on the merits. Such an order, according to the Court, would presumably subject the exhibitor to contempt penalties for showing a particular motion picture prior to a determination on the merits even if the film is ultimately found not to be obscene. There was no assurance of a prompt determination on the merits. As a result, the system "authorizes prior restraints of indefinite duration on the exhibition of motion pictures that have not been finally adjudicated to be obscene." *Id.* at ——, 100 S.Ct. at 1161. The Court concluded that "the absence of any special safeguards governing the entry and review of orders restraining the exhibition of named and unnamed motion pictures, without regard to the context in which they are displayed, precludes the enforcement of these nuisance statutes against motion picture exhibitors." *Id.*

Four justices dissented. Chief Justice Burger and Justice Powell argued that the dispute was not in a position for the Court to decide on the merits both because it did not present a true controversy and because the statute needed construction by the state court prior to a Supreme Court decision. Justices White and Rehnquist disagreed with the construction of the statute by the majority. They thought the statute only provided for an injunction against obscene films, which could only be enforced upon showing that a film was obscene, and consequently was no different than a criminal statute forbidding the exhibition of obscenity. None of the dissenters attacked the majority's position on what constitutes an unconstitutional prior restraint. In fact, the opinion of two dissenters expressly agreed and the opinion of the other two dissenting justices seemed to agree with the majority's holding under its view of the facts. Thus, all the justices appeared to concur that a prior restraint of motion pictures that have not been determined to be

obscene is unconstitutional unless adequate procedural safeguards are present.

In all respects, therefore, the Supreme Court decision in *Vance* fully supports the decision reached by this court. It clearly holds that suppressing future showings of motion pictures based on the content of past showings is a prior restraint. It further holds that such a prior restraint is constitutional only if the restrained motion pictures have been adjudged to be obscene or adequate procedural safeguards exist. The only difference between *Vance* and the present situation is that the suppression of motion pictures here results from a licensing scheme rather than an injunction. This difference has no consequence, however, since the Supreme Court cases reviewed above clearly establish that prior restraints caused by licensing systems are subject to the same standards as those resulting from other means. Thus, *Vance* mandates, as do prior Supreme Court cases, the conclusion that a revocation of license such as occurred here is impermissible.

Accordingly,

IT IS HEREBY ORDERED that sections 20–1–24 and 20–20–11 of the Revised Ordinances of Salt Lake City are unconstitutional and void insofar as they authorize a revocation or suspension of licenses of motion picture theatres based on a prior conviction or violation of exhibiting or distributing obscene material. The plaintiffs have requested the court to enjoin the defendants from enforcing these ordinances. In view of the now manifestly clear position of the law in this area and the confidence the court has in the defendants' desire to follow the law, the court finds it unnecessary to issue an injunction at this time.